In re Camillo MACALUSO
d/b/a Greco's Tailor
Shop, Debtor.

Bankruptcy No. 00–10618 B.

United States Bankruptcy Court,
W.D. New York.

Nov. 2, 2000.

Hiscock & Barclay, LLP (Timothy J. Walker, of counsel) Buffalo, NY, for Wallingford Financial Group, Inc.

David A. Curtin, Williamsville, NY, for debtor.

CARL L. BUCKI, Bankruptcy Judge.

Camillo Macaluso, the debtor herein, has proposed a Chapter 13 plan which contemplates a strip-down of the mortgage that encumbers a multi-use parcel of real property. This parcel contains a tailor shop and two residential apartments, one of which is occupied by the debtor. The mortgage secures a debt owed to Wallingford Financial Group, Inc., for an amount that exceeds $128,000. Asserting that the property has a value of only $75,000, Macaluso wishes to limit Wallingford's secured claim to this amount, and to treat the balance of the claim as an unsecured debt. In objecting to confirmation of this plan, Wallingford contends that the proposed treatment violates the anti-modification provisions of 11 U.S.C. § 1322(b)(2).

Section 1322(b)(2) states that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." Initially upon enactment of the bankruptcy code, courts disagreed about how to reconcile this section with the language in 11 U.S.C. § 506(a), that a claim is secured "to the extent of the value of such creditor's interest in the estate's interest in such property." Whereas some bankruptcy courts rejected any proposal to strip down a mortgage on the residence of a debtor in Chapter 13, others held that section 1322(b)(2) merely precluded a modification beyond the delineation of secured status under section 506. Ultimately, the Supreme Court resolved this conflict in its decision in *Nobelman v. American Sav-*

*ings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Declining "to give effect to § 506(a)'s valuation and bifurcation of secured claims", the Court ruled that "[s]ection 1322(b)(2) prohibits such a modification where ... the lender's claim is secured only by a lien on the debtor's principal residence." 508 U.S. at 332, 113 S.Ct. 2106.

The present dispute focuses not on the holding of *Nobelman,* but on the scope of its application. Macaluso argues that section 1322(b)(2) prohibits only the modification of a mortgage on property that a debtor uses exclusively as a principal residence. Because his real estate includes additionally a second residential unit and a store, Macaluso would allow a bifurcation of Wallingford's claim into secured and unsecured components. Wallingford urges a different interpretation, that section 1322(b)(2) prohibits modification of any debt secured only by a mortgage that encumbers property used as the debtor's principal residence.

Bankruptcy and appellate courts have given inconsistent interpretation to that language of section 1322(b)(2) which restricts the modification of the rights of holders of claims "secured only by a security interest in real property that is the debtor's principal residence." Within the Western District of New York, one of my two colleagues on the bankruptcy bench has held that the anti-modification provisions of section 1322(b)(2) do not protect "a mortgage secured by a multi-family structure where only one unit is used as the debtor's residence." *In re Kimbell,* 247 B.R. 35, 38 (Bankr.W.D.N.Y.2000). Meanwhile, my other colleague has ruled that the section's applicability depends on the intent of the parties at the time of the extension of the mortgage.

> If the transaction was predominately viewed by the parties as a loan transaction to provide the borrower with a residence, then the antimodification provision will apply. If, on the other hand, the transaction was viewed by the par-

ties as predominantly a commercial loan transaction, then stripdown will be available.

*In re Brunson,* 201 B.R. 351, 354 (Bankr. W.D.N.Y.1996). In reaching these contrasting results, my colleagues have looked to the legislative history behind section 1322(b)(2). I respectfully disagree both with their conclusions and with their approach. Unambiguous and clear is the language that precludes any modification of Wallingford's mortgage. Thus, in my view, no reference to legislative history is either necessary or appropriate.

The key factor in interpreting section 1322(b)(2) is placement of the word "only". The statute excepts from modification any claim "secured only by a security interest in real property that is the debtor's principal residence." As used in this clause, "only" is an adverb modifying "secured". In the present instance, Wallingford is the holder of a claim whose only security is a mortgage on a certain parcel of real property. Because that property is also the debtor's residence, Macaluso's plan may not modify the rights of the mortgage holder. Notably, the statute does not limit its application to property that is used *only* as a principal residence, but refers generally to any parcel of real property that the debtor uses for that purpose. So long as the only collateral is a single parcel of real estate, it matters not that that parcel may fulfill many uses or be divided into many units. The statutory requirements are fulfilled whenever the debtor principally resides in that real estate or some part thereof. In short, this court finds no ambiguity in the statutory language. Because the property serves as Macaluso's principal residence, he may not modify in Chapter 13 the mortgage that that property secures. Accordingly, this court must deny confirmation of the debtor's plan.

So ordered.