## LITTON LOAN SERVICING, LP, Defendant–Appellant,

v.

## Regina BEAMON, Plaintiff–Appellee.

### No. 5:02–CV–1458(FJS).

United States District Court, N.D. New York.

Aug. 21, 2003.

Carus & Manniello, P.C., Syosset, NY, Lisa Milas, of Counsel, Attorneys for Defendant–Appellant

Lefkowitz & Keefe, P.C., Albany, NY, Thomas K. Keefe, of Counsel, Attorneys for Plaintiff–Appellee.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

Appellant, Litton Loan Servicing, LP, appeals from the October 18, 2002 Memorandum–Decision and Order of the United States Bankruptcy Court for the Northern District of New York, the Hon. Robert E. Littlefield, Jr., presiding, granting summary judgment for Appellee in an adversary proceeding below. On appeal, Appellant asserts that the Bankruptcy Court erred in holding that the anti-modification provision set forth in 11 U.S.C. § 1322(b)(2) is inapplicable to multi-use dwellings.

### II. BACKGROUND

**A. Factual History**

In its October 18, 2002 Memorandum–Decision and Order, the Bankruptcy Court set forth the relevant facts, as stipulated by the parties, as follows:

1) Debtor filed a Chapter 13 petition on March 2, 2001.

2) Defendant has a mortgage constituting a first lien on the premises known as 968 Main Avenue, Schenectady, New York.

3) The premises is, and was at the time the mortgage was executed, a two family residence.

4) The Debtor resides in one of the residential units, rents the second residential unit and has done so since the issuance of the mortgage except for gaps between tenancies.

5) The fair market value of the property is $43,500.

6) The Defendant is undersecured.

*See* Dkt. No. 1, Exhibit "L" at 2. It is further undisputed that the premises in question is Appellee's principal residence and that the mortgage is a residential form mortgage.

## B. Procedural History

As stated, Appellee filed a Chapter 13 petition on March 2, 2001. Appellee thereafter commenced an adversary proceeding seeking, *inter alia,* a judicial determination of the current value of her residence and the extent and value of Appellant's lien. Specifically, Appellee sought to "cram down" Appellant's lien on her residence to reflect the current market value of the property. Appellant moved to dismiss the adversary complaint on the ground that 11 U.S.C. § 1322(b)(2) prohibits modification of a lien on a primary residence. The Bankruptcy Court denied Appellant's motion to dismiss the adversary complaint on the ground that § 1322(b)(2) does not apply to multi-use dwellings. In addition, noting that there was no dispute as to the material facts, the Bankruptcy Court granted summary judgment *sua sponte* in Appellee's favor and reduced the amount of Appellant's lien to reflect the current market value of the collateral real property. Appellant timely filed the instant appeal.

## III. DISCUSSION

On appeal from a decision of the bankruptcy court, the district court may "affirm, modify or reverse a bankruptcy judge's judgment, order or decree." Fed.

R. Bankr.8013. "It is well established that in examining a bankruptcy court's conclusions of law, the district court applies a *de novo* standard of review." *In re Faraldi,* 286 B.R. 498, 501 (E.D.N.Y.2002) (citation omitted).

A Chapter 13 plan may, subject to the bankruptcy court's approval,

modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . . .

11 U.S.C. § 1322(b)(2) (emphasis added). The dispute in this appeal revolves around the meaning of the statutory phrase "other than a claim secured only by a security interest in real property that is the debtor's principal residence," the so-called "antimodification provision."

Relying on *Lomas Mortgage, Inc. v. Louis,* 82 F.3d 1 (1st Cir.1996), the Bankruptcy Court found, and Appellee argues on appeal, that the antimodification provision applies only where the real property in question is used *exclusively* as the debtor's principal residence. Appellant, on the other hand, contends that the antimodification provision applies to any real property that is used as the debtor's principal residence, notwithstanding any other uses of the collateral real property. *See, e.g., In re Macaluso,* 254 B.R. 799, 800 (Bankr. W.D.N.Y.2000); *In re Brunson,* 201 B.R. 351, 354 (Bankr.W.D.N.Y.1996).

In *Lomas,* the First Circuit found that the application of § 1322(b)(2)'s antimodification provision is "inconclusive" where the mortgagee holds a security interest that "extend[s] beyond the principal residence to other property or other income-producing components of the principal residence . . . ." *Lomas,* 82 F.3d at 3. The court similarly found the contemporaneous legis-

lative history of § 1322(b)(2) inconclusive. *See id.* at 6. The court concluded, however, that the antimodification provision only applies to dwellings that are used *exclusively* as the mortgagor's principal residence, *see id.* at 7; *accord In re Kimbell,* 247 B.R. 35, 37–38 (Bankr.W.D.N.Y.2000), and established a bright-line rule—if the mortgage in question covers *any* other property or income producing components beyond the principal residence, § 1322(b)(2) does not apply. Notably, the court rationalized this result, at least in part, on the ground that

> extending the antimodification provision to multi-family houses would … create a difficult line-drawing problem. It is unlikely that Congress intended the antimodification provision to reach a 100–unit apartment complex simply because the debtor lives in one of the units. Limiting the antimodification provision to single-family dwellings creates a more easily administered test.

*Lomas,* 82 F.3d at 6. The *Lomas* court additionally relied on subsequent legislative history related to 1994 amendments to Chapter 11 that added a similar antimodification provision to that Chapter. Specifically, the *Lomas* Court found significant a reference in the legislative history to *In re Ramirez,* 62 B.R. 668 (1986), a case holding that § 1322(b)(2)'s antimodification provision was inapplicable to a multi-family home. *See Lomas,* 82 F.3d at 6–7.

In contrast, the *Brunson* court held that the applicability of § 1322(b)(2) depends on the intent of the parties at the time that they entered into the mortgage agreement. *See Brunson,* 201 B.R. at 353. The court explained that

[i]f the transaction was predominantly viewed by the parties as a loan transaction to provide the borrower with a residence, then the antimodification provision will apply. If, on the other hand, the transaction was viewed by the parties as predominantly a commercial loan transaction, then stripdown will be available.

*Id.* at 354. The *Brunson* court thus rejected the bright-line rule set forth in *Lomas* in favor of a fact-sensitive, case-by-case approach.[1]

The Court agrees with *Lomas* insofar as that case held that the text of § 1322(b)(2) is inconclusive with respect to mortgages that extend to property beyond that which is used as a principal residence. *See Lomas,* 82 F.3d at 3. However, while the Court agrees that reference to the legislative history is appropriate in interpreting an ambiguous statute, *see, e.g., Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 15 (2d Cir.1999), the Court does not accept the *Lomas* court's conclusions.

To begin, the Court is unpersuaded by the *Lomas* court's reliance on the subsequent legislative history related to the 1994 amendments to Chapter 11. Specifically, the Court finds that the reference to *Ramirez,* which, as stated, held that the antimodification provision did not apply to a particular multi-family residence, is too thin a reed to support the conclusion that Congress intended the bright-line approach set forth in *Lomas.* Significantly, as the court noted in *Brunson,* the *Ramirez* court engaged in a fact-sensitive analysis to determine the nature of the mortgage in

---

1. In *Macaluso,* the court steered yet a third course. Finding that " 'only' is an adverb modifying 'secured,' " the court concluded that the antimodification provision unambiguously applies to any mortgage secured by property that is used, at least in part, as a principal residence. *See Macaluso,* 254 B.R.

at 800. In other words, the court rejected the notion that there is any limiting principle on the reach of § 1322(b)(2)—if the encumbered property is used as a principal residence, § 1322(b)(2) will apply irrespective of the extent and nature of any other uses of the property.

question and did not establish a bright-line rule that multi-family homes are *always* beyond the reach of the antimodification provision. *See Brunson*, 201 B.R. at 352–53.

Indeed, in the interest of creating an easily administered test, the *Lomas* court arbitrarily excluded multi-family residences that are both used as a principal residence and covered by a residential mortgage from the reach of § 1322(b)(2). The Court can think of no particularly compelling reason that a residential mortgage on a principal residence that has an attic apartment, whether rented or not, can be modified while a mortgage on a virtually identical house (having, perhaps, one less door) cannot be modified. Simply put, the *Lomas* approach is inconsistent with the purpose of § 1322(b)(2), at least insofar as it would allow modification of mortgages that are indisputably residential in nature.

Moreover, with respect to the "unintended results" argument put forth in *Lomas* and *Kimbell*, it may be true that an owner-occupied 100–unit complex is outside the scope of what Congress had in mind when it enacted § 1322(b)(2). However, it is doubtful that such a complex would be secured by a *residential* mortgage.[2]

■ There is no question that Congress' intent in including the antimodification provision in § 1322(b)(2) was to " 'encourage the flow of capital into the home lending market' " by reducing mortgagees' risk in Chapter 13 proceedings. *See Kimbell*, 247 B.R. at 38 (quoting *Nobelman v. American Savings Bank*, 508 U.S. 324,

332, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (Stevens, J. concurring)). Viewed in this light, the Court finds that the *Brunson* approach is most consistent with Congressional intent, as it calls for a case-by-case determination of whether the parties intended the mortgage in question to be primarily residential versus primarily commercial in nature.

For the foregoing reasons, the Court vacates the judgment of the Bankruptcy Court, adopts the reasoning of *Brunson*, and remands the matter for proceedings consistent with this Court's decision.

## IV.   CONCLUSION

After carefully considering the file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the judgment of the Bankruptcy Court is **REVERSED;** and the Court further

**ORDERS** that the instant case is **REMANDED** for proceedings consistent with this Court's decision.

**IT IS SO ORDERED.**

---

**2.** This observation exposes the flaw in the *Macaluso* approach. The *Macaluso* court made no distinction between residential and commercial mortgages, a distinction that the Court believes is critical in light of Congress' purpose in enacting § 1322(b)(2), i.e., to insulate residential mortgagees from the risk of mortgagor bankruptcies. Under *Macaluso*, at least in theory, a *commercial* mortgage on an owner-occupied 100–unit complex would be excepted from modification, a result that would presumably not serve the purpose of buoying the residential lending market.