FILED

ORDERED PUBLISHED

MAR 7 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.  ID-12-1397-JuKiKu |
| CLAYTON HOYT WAGES and ANDREA S. WAGES, | Bk. No.  8:11-bk-40249-JDP |
| Debtors. | |
| CLAYTON HOYT WAGES; ANDREA S. WAGES, | |
| Appellants, | |
| v. | **O P I N I O N** |
| J.P. MORGAN CHASE BANK, N.A.; UNITED STATES TRUSTEE, | |
| Appellees. | |

Argued and Submitted on November 22, 2013
by video conference

Filed - March 7, 2014

Appeal from the United States Bankruptcy Court
for the District of Idaho

Honorable Jim D. Pappas, Bankruptcy Judge, Presiding

_____

Appearances:     Brent Taylor Robinson, Esq., Robinson, Athone & Tribe, argued for appellants Clayton Hoyt Wages and Andrea S. Wages; Jon A. Stenquist, Esq., Moffatt Thomas Barrett Rock & Fields, Chtd., argued for appellee J.P. Morgan Chase Bank, N.A.

_____

Before:  JURY, KIRSCHER, and KURTZ, Bankruptcy Judges.

Opinion by Judge Jury
Dissent by Judge Kurtz

JURY, Bankruptcy Judge:

Debtors, Clayton Hoyt Wages and Andrea S. Wages, appeal from the bankruptcy court's order denying confirmation of their chapter 11[1] plan in which they sought to modify the terms of a mortgage on their real property held by appellee-creditor, J.P. Morgan Chase Bank, N.A. (Creditor).

At issue is whether the anti-modification provision under § 1123(b)(5) applies to any loan secured only by real property that the debtor uses as a principal residence or whether it is limited to those claims secured by property used only as a debtor's principal residence. The issue is one of statutory construction and of first impression in this Circuit. We hold that the anti-modification provision in § 1123(b)(5) applies to any loan secured only by real property that the debtor uses as a principal residence. Accordingly, we AFFIRM.

## I. FACTS[2]

In 1999, debtors purchased property consisting of a house, buildings and eleven acres near Heyburn, Idaho (property). Initially, they used approximately four acres for raising feed or crops, five acres for pasturing livestock and two acres for residential purposes. At that time, debtors' employment

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Many of the undisputed underlying facts are taken from the bankruptcy court's decision In re Wages, 479 B.R. 575 (Bankr. D. Idaho 2012).

-2-

consisted of raising roping stock on the property to rent out for rodeos and roping events. About a year later, debtors purchased a truck to haul their livestock, and income from use of their truck became a component of their business income.

Between 2004 and 2006, debtors sold all their livestock to raise money to stave off a foreclosure against the property.[3] Since then, debtors have not used the property at all to generate income from livestock. Debtors leased an additional truck and began hauling commodities for others.

At some time, their former livestock/trucking business became a trucking-only business. Mr. Wages drives one of the trucks; Mrs. Wages secures permits, keeps the books for the business, and handles other administrative chores from an office in debtors' home. When they are not being used on the road, debtors park the two trucks and trailers on the property.

On March 4, 2011, debtors filed their chapter 11 petition to allow them to retain their residence. At the time, they were using a portion of the property to operate the business, including a small office in the house and enough adjoining space to park two truck tractors and up to three trailers.

In May 2011, Creditor[4] filed a $127,418.31 secured claim in debtors' bankruptcy case based on a mortgage debt. Under the mortgage note's terms, debtors agreed to make monthly payments

---

[3] Apparently in an effort to stop the foreclosure process, debtors filed for bankruptcy protection in 2005 and in 2006. Both of those cases were dismissed.

[4] Creditor purchased the loans and other assets of Washington Mutual Bank.

through April 1, 2029, at an annual interest rate of 7.5%. The debt was secured by a mortgage on the property.

In November 2011, debtors filed a chapter 11 plan. Under the plan, debtors proposed to modify the terms of Creditor's mortgage by reducing the interest rate to 5.0% per year and extending the payoff date to March 1, 2032. Creditor objected to confirmation of the plan, arguing that it does not meet the confirmation requirements of §§ 1129(a)(1) and 1123(b)(5).

On June 12, 2012, the bankruptcy court held an evidentiary hearing on the confirmation of debtors' proposed plan. At the end of the hearing, the court took the matter under advisement.

On July 24, 2012, the bankruptcy court entered its Memorandum of Decision, sustaining Creditor's objection to confirmation of debtors' proposed chapter 11 plan. On the same day, the court entered the order denying confirmation of debtors' chapter 11 plan. Debtors timely appealed and filed a motion for leave to appeal with this court. On September 10, 2012, a motion's panel granted leave to appeal.

## II.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.  Whether the anti-modification provision under § 1123(b)(5) applies to any loan secured only by real property that the debtor uses as a principal residence; and

B.  Whether the bankruptcy court erred when it used the petition date as the date to determine whether the deed of trust

-4-

or mortgage could be modified.[5]

## IV.   STANDARD OF REVIEW

We review the bankruptcy court's statutory construction of § 1123(b)(5) de novo. <u>BAC Home Loans Serv., LP v. Abdelgadir (In re Abdelgadir)</u>, 455 B.R. 896, 900 (9th Cir. BAP 2011).

## V.   DISCUSSION

**A.   Amended Statement Of Issues Is Proper**

Appellants' Statement of Issues (SOI) on appeal filed on December 5, 2012, listed only the first issue stated above, but their opening brief contained both issues.  Appellee argued that the second issue was waived because it had not been included in Appellants' SOI.  In response, Appellants amended their SOI to include the second issue and filed it with the bankruptcy court. Appellee objected to the amended SOI again asserting that issues not included in an SOI are waived under the holding in <u>Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.)</u>, 184 B.R. 74 (9th Cir. BAP 1995).  A motions panel deferred resolution of the waiver issue to the hearing on the merits.

We conclude that Appellants did not waive the second issue. The rule in <u>In re Nat'l Lumber</u> was abrogated by the Ninth Circuit's holding in <u>Office of the U.S. Tr. v. Hayes (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)</u>, 104 F.3d 1147, 1148 (9th Cir. 1997).  There, the Ninth Circuit held that arguments not specifically listed in an SOI are not waived.  The court reasoned that an SOI required by Rule 8006 "does not impact upon issue statements required by the court of appeals.

---

[5] The propriety of this second issue is addressed below.

-5-

The two are separate in nature and distinct in result." Id. The Ninth Circuit's reasoning is equally applicable to appeals in this court. Therefore, the second issue is not waived and will be addressed on the merits. However, for purposes of flow, since this second issue has impact on the first, the order will be reversed in this opinion.

**B. The Bankruptcy Court Did Not Err When It Used the Petition Date As the Date to Determine Whether The Deed Of Trust Could Be Modified**

Debtors raise an issue that is now settled in this court. In In re Abdelgadir, 455 B.R. at 902-903, this court held that the petition date is the appropriate date for determining whether the anti-modification provision of § 1123(b)(5) applies to a secured claim. We later applied the same reasoning to the identical wording in § 1322(b)(2) in Benafel v. One W. Bank, FSB (In re Benafel), 461 B.R. 581 (9th Cir. BAP 2011). As we are bound to follow our published decisions, Salomon N. Am. v. Knupfer (In re Wind N' Wave), 328 B.R. 176, 181 (9th Cir. BAP 2005), we use the petition date, rather than the loan transaction date, for determining whether the anti-modification provision of § 1123(b)(5) applies to Creditor's claim.

**C. The Anti-Modification Provision Under §1123(b)(5) Applies To Any Loan Secured Only By Real Property That The Debtor Uses As A Principal Residence**

A bankruptcy court shall confirm a plan only if it complies with the applicable provisions of chapter 11. See § 1129(a)(1). One such applicable provision is § 1123(b)(5) which states:

> (b) Subject to subsection (a) of this section, a plan may—
> . . .
> > (5) modify the rights of holders of secured claims, other than a claim secured only by a

-6-

> security interest in real property that is
> the debtor's principal residence . . . .

This provision, known as the anti-modification provision, prevents a debtor from modifying claims that are secured only by a debtor's primary residence.[6]

Our task of resolving the parties' dispute over the meaning of § 1123(b)(5) begins with the language of the statute itself. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989). Where the statute's language is plain, the inquiry ends and our sole function is to enforce it according to its terms. Id.

According to its plain language, the prohibition against modification of the rights of the holders of secured claims in § 1123(b)(5) has three distinct requirements: first, the security interest must be in real property; second, the real property must be the only security for the debt; and third, the real property must be the debtor's principal residence. Here, there is no dispute that the first two requirements have been met. Creditor's claim is secured by debtors' real property and debtors do not assert that anything other than the real property secures the claim. Therefore, our focus is on the last requirement — whether the real property is debtors' principal residence. If it is, debtors may not modify the claim secured

---

[6] The wording of § 1123(b)(5) is identical to the anti-modification provision in chapter 13's § 1322(b)(2). Since these sections contain the same statutory language, the panel considers the decisions interpreting either provision as persuasive in interpreting the other. See Benafel, 461 B.R. at 586-87.

by their property.

Debtors do not dispute that the house on the property was being used as their principal residence on the petition date. Under our plain meaning analysis, the inquiry should end there. Nonetheless, relying on non-binding case law, debtors contend there is an uncodified exception to § 1123(b)(5) that applies when the property is used not only as the debtors' residence, but also for a commercial use. In this case, debtors use part of their residence for a home office to run their business and they also park trucks and trailers that they use in the business on the property.

Straying from the plain words of the statute, courts have taken different approaches in resolving whether real property should be considered a "debtor's principal residence" when the property also has a commercial use. Parties are subject to these different approaches and hence different results. Courts disagree on what factors should be applied, how they should be applied, and even what they mean.

One line of cases equates the term "real property" with "debtor's principal residence." See Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough), 461 F.3d 406, 411 (3d Cir. 2006) (focusing on Congress' use of the word "is" in the phrase "real property that is the debtor's principal residence," and finding that, by using "is," Congress equated "real property" and "principal residence," meaning that, for the anti-modification provision to apply, the property "must be only the debtor's principal residence" and have no other use (emphasis in original)); Adebanjo v. Dime Sav. Bank of N.Y., FSB

(In re Adebanjo), 165 B.R. 98, 103-04 (Bankr. D. Conn. 1994) (same).

We disagree with the Third Circuit's parsing of the words of the statute in Scarborough because it disregards the bankruptcy code's definition of "debtor's principal residence" in § 101(13A).[7] The term "means a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property."[8] The definition avoids defining "real property" and also clarifies that whether a structure is a principal residence is independent of whether it might be real property. Simply put, the definition does not equate the term "real property" with "debtor's principal residence." Therefore, an analysis which equates the two is misplaced.

Another line of cases follows a totality of the circumstances or case-by-case approach. Under this approach, the intention of the parties is what matters most. See Brunson v. Wendover Funding, Inc. (In re Brunson), 201 B.R. 351, 353

---

[7] Section 101(13A) was amended in December 2010 pursuant to the Bankruptcy Technical Corrections Act of 2010. See Pub.L. 111-327, 124 Stat. 3557 (Dec. 22, 2010). The 2010 amendment added the phrase "if used as the principal residence by the debtor," and was intended to clarify "that [this] definition pertains to a structure used by the debtor as a principal residence." See Pawtucket Credit Union v. Picchi (In re Picchi), 448 B.R. 870, 872 (1st Cir. BAP 2011) (citing 156 Cong. Rec. H7158 (daily ed. Sept. 28, 2010)).

[8] Section 101(13A)(B) states that the "debtor's principal residence" includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer if used as the principal residence by the debtor. Neither party asserts that this section applies to this matter.

(Bankr. W.D.N.Y. 1996) ("each case must turn on the intention of the parties").[9] Such intent may be discerned by examining the underlying mortgage documents.

> The Court must focus on the predominant character of the transaction, and what the lender bargained to be within the scope of its lien. If the transaction was predominantly viewed by the parties as a loan transaction to provide the borrower with a residence, then the antimodification provision will apply. If, on the other hand, the transaction was viewed by the parties as predominantly a commercial loan transaction, then stripdown will be available.

Id. at 354. See also In re Zaldivar, 441 B.R. 389 (Bankr. S.D. Fla. 2011) ("character of the transaction" and substance of what the lender bargained for are paramount).

We reject this approach as it is inconsistent with our recent case law. We do not delve into the parties' intentions on the loan transaction date when the appropriate time for determining whether property is a debtor's principal residence is the petition date. See Benafel, 461 B.R. at 585 and Abdelgadir, 455 B.R. at 898; compare Lievsay v. W. Fin. Sav. Bank, F.S.B. (In re Lievsay), 199 B.R. 705, 709 (9th Cir. BAP 1996) (modification under § 1123(b)(5) was denied when debtor failed to show that a home office added significant value to his property, or that the bank relied on the additional security offered by his home office in making the loan secured by the property).

Finally, there is the bright-line approach taken by the

---

[9] The Brunson court also developed a long list of factors to use in case-by-case determinations of whether property is commercial or the debtor's principal residence. 201 B.R. at 353.

bankruptcy court in In re Macaluso, 254 B.R. 799, 800 (Bankr. W.D.N.Y. 2000). The court held that the anti-modification exception in § 1322(b)(2) applies to any property that is used as the debtor's principal residence, notwithstanding the fact that the debtor's property in that case included a second residential unit and a store.[10] We conclude that the bright-line approach is most consistent with the plain language of § 1123(b)(5).

As noted by the bankruptcy court, the plain language of § 1123(b)(5) does not protect from modification "claim[s] secured only by a security interest in real property that is exclusively the debtor's principal residence," or "claim[s] secured only by a security interest in real property that is the debtor's principal residence, unless the debtor also uses the property for significant commercial purposes." Wages, 479 B.R. at 581 (emphasis in original). We agree with the bankruptcy court's assessment that there is nothing in the bankruptcy code indicating that, once a commercial use of a property becomes sufficiently "significant," that property ceases being the debtor's principal residence — either a property is a debtor's principal residence or it is not.

The adoption of an objective rule eliminates line drawing and promotes certainty in the home mortgage lending market. Wages, 479 B.R. at 582 (citing In re Bulson, 327 B.R. 830, 842

---

[10] Macaluso employed a simple two part test compared to our three prong analysis; the claims excepted from modification under § 1322(b)(2) are those (1) secured only by a parcel of real estate which (2) the debtor uses for his principal residence. 254 B.R. at 800.

(Bankr. W.D. Mich. 2005)). However, the downside is that a bright line rule may sometimes lead to harsh results. Nonetheless, "the potential for harsh results can not be used as an excuse by the Court to torture the Code's language to reach a different rule in this case. Even if the Court does not agree with all of the possible outcomes produced by the statutory language, it is Congress, not this Court, that must repair any problems with the Code." Wages, 479 B.R. at 583 (citing Lamie v. U.S. Tr., 540 U.S. 526, 538, 542 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill. . . . If Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.") (internal quotation marks and citations omitted)).

Finally, in support of their argument, debtors contend that the bankruptcy court's bright line construction of § 1123(b)(5) "seems to eliminate the use of the word 'only'." This textual argument is unpersuasive. Essentially debtors add a second "only" into the statutory language to further limit the application of § 1123(b)(5).

> Although the statute uses "only" to require the secured creditor to have no other security for the debt, the Debtors construe the statute also to require that the residential structure serve only one function, that of being their principal

-12-

residence. . . . The Debtor's argument finds no support in the plain language of the Code. There simply is no second "only" in the statutory language of § 1123(b)(5), nor any way to read the one usage of that term to limit the use of the property rather than limiting the extent of the collateral for the secured debt.

In re Schayes, 483 B.R. 209, 215 (Bankr. D. Ariz. 2012).

Because the language in § 1123(b)(5) is plain and unambiguous, we have no need to look at legislative history or a policy-driven analysis. We hold that the anti-modification exception applies to any loan secured only by real property that the debtor uses as a principal residence property, even if that real property also serves additional purposes.

## VI. CONCLUSION

For all these reasons, we AFFIRM.

Dissent begins on next page.

-13-

KURTZ, Bankruptcy Judge, Dissenting:

I respectfully dissent. I disagree with the majority's interpretation of the so-called plain meaning of the statute. In my view, the majority takes the statutory phrase "claim secured only by a security interest in real property that **is** the debtor's principal residence" and recasts it as if the phrase actually read "claim secured only by a security interest in real property that **includes** the debtor's principal residence."

In lieu of the majority's analysis, I find persuasive and would follow the reasoning and holding of Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough), 461 F.3d 406, 410-13 (3d Cir. 2006). In Scarborough, the Third Circuit Court of Appeals held that the anti-modification provisions in § 1322(b)(2) and § 1123(b)(5) do not apply to mortgaged real property on which the debtor principally resides if the debtor uses another part of the mortgaged real property to generate income. Id.

Like the majority decision, supra, Scarborough considered the statutory language to be unambiguous. However, Scarborough reached a much different conclusion on the plain meaning of the statute. Whereas the majority here has construed the anti-modification provisions to apply to any mortgaged real property the debtor uses as his or her principal residence, Scarborough effectively construed the anti-modification provisions to apply only to mortgaged real property the debtor uses exclusively as his or her principal residence. That two appellate courts could, after careful analysis, come to such divergent

-1-

conclusions on the plain meaning of the statute tends to support the notion that the statute actually is ambiguous.  In any event, Scarborough points out that the legislative history supports its construction of the statute.  Id. at 413.  The majority decision herein makes no such claim.

The majority considered Scarborough but ultimately rejected the Third Circuit's analysis.  According to the majority, Scarborough's construction of the statute conflicts with the statutory definition of "debtor's principal residence" contained in § 101(13A).  The majority asserts that a conflict exists because Scarborough's construction of § 1322(b)(2) and § 1123(b)(5) equates the "debtor's principal residence" solely with real property whereas the statutory definition of "debtor's principal residence" may include personal property.  But the majority does not explain the practical significance of this so-called conflict, nor do I perceive any.  More importantly, to the extent there is any tension between § 1322(b)(2) and § 1123(b)(5) on the one hand and § 101(13A) on the other hand, Congress created this tension – not Scarborough.  Put another way, Congress limited the scope of the anti-modification provisions to real property by including in both provisions the term "real property" but chose not to similarly limit the definition of "debtor's principal residence."  Thus, the difference between the anti-modification provisions and the statutory definition is a direct result of the different language Congress chose to use in each instance.  That Scarborough's construction gives meaning to the different language Congress used is not a persuasive basis for rejecting

-2-

<u>Scarborough</u>.

For the reasons set forth above, I respectfully dissent.[1]

---

[1] I also prefer <u>Scarborough</u>'s ruling that the relevant date for considering how the debtor uses the property is the loan transaction date rather than the petition date. <u>Id.</u> at 412. Nonetheless, I do not base my dissent on this ground. Rather, I agree with the majority that our prior decisions in <u>Benafel v. One W. Bank, FSB (In re Benafel)</u>, 461 B.R. 581 (9th Cir. BAP 2011), and <u>BAC Home Loans Serv., LP v. Abdelgadir (In re Abdelgadir)</u>, 455 B.R. 896 (9th Cir. BAP 2011), are controlling on this point and answer this question in favor of the petition date. Even so, regardless of which date is used, the result in this case would be the same because the mortgaged real property was used for income generating purposes on both the loan transaction date and the petition date.