### IN RE: Eloy and Rosa ABREGO, Debtors.

### Case No. 12 B 29855

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 25, 2014

Robert L. Schwaba, Patrick Semrad, Robert J. Semrad & Associates, LLC, Chicago, IL, Attorneys for Debtor.

Matteo A. Crawford, David T. Cohen & Associates Ltd., Orland Park, IL, Attorney for TCF National Bank.

Chapter 13

## ORDER GRANTING DEBTORS' MOTION TO CONFIRM PLAN (EOD # 51)

PAMELA S. HOLLIS, United States Bankruptcy Judge

This matter comes before the court on the motion of debtors Rosa and Eloy Abrego to confirm their Chapter 13 plan. TCF National Bank objected to the motion on the grounds that its first mortgage, secured by the Debtors' principal residence, cannot be modified. The Abregos argue that since the real property is used in part for rental purposes, it is excepted from the anti-modification provision of 11 U.S.C. § 1322(b)(2).

For the reasons stated below, the court grants the Debtors' motion.

## BACKGROUND

There is little dispute that the real property at 4219 West 24th Place, Chicago,

Illinois (the "24ᵗʰ Place Property"), is the Abregos' principal residence. It is listed as their street address on the bankruptcy petition. According to Schedule A, they own the property in tenancy by the entirety, a form of ownership that can be used only by a husband and wife for their homestead property. Although they own another piece of real property, they claimed the homestead exemption on Schedule C in the 24ᵗʰ Place Property. While they did not list any leases on Schedule G, the Abregos disclosed income of $600 on Schedule I described as "rent from 24th Pl Property."

## CONTENTIONS OF THE PARTIES

TCF argues that under Illinois law, "principal residence" is defined to include a building with up to three residential units. TCF also asserts that the City of Chicago has zoned the 24ᵗʰ Place Property for use as a single family residence. Unless the Abregos have a variance, they "may not benefit from their illegal conversion to remove the property from the scope of the antimodification provision of 11 USC § 1322(b)(2)." Objection to Confirmation of Plan and Response to Debtors' Motion to Confirm Plan (EOD 57) at ¶ 21.

The Abregos first assert that TCF has been on notice for years that a portion of the 24th Place Property is rented out. Second, use of the property as a two-flat is allowed under Chicago zoning ordinances. The Abregos also argue that their claim of a homestead exemption in the 24th Place Property does not prohibit it from being a multi-unit property.

Finally, in a supplemental brief invited by the court, the Abregos argue that since the language of § 1322(b)(2) is ambiguous, it is appropriate to refer to the legislative history of § 1123(b)(5), a section with identical language to § 1322(b)(2). Pursuant to this legislative history, it is clear that debtors whose principal residence is a multi-unit property are not restricted by the antimodification rule.

## LEGAL DISCUSSION

11 U.S.C. § 1322(b)(2) prohibits the modification in a Chapter 13 plan of a "claim secured only by a security interest in real property that is the debtor's principal residence." As one judge wrote, "courts have engaged in a vigorous debate over the correct interpretation of § 1322(b)(2)." *In re Moore,* 441 B.R. 732, 739 (Bankr.N.D.N.Y.2010). The legal question before the court today boils down to this: Does "real property that is the debtor's principal residence" include real property that has a rental component?

The majority of courts to have considered this question determined that a debtor may modify a mortgage in a Chapter 13 plan—that is, the anti-modification provision of § 1322(b)(2) does not apply—if the property it secures is a multi-unit property and the debtor resides in only one unit.

In 2006, the Third Circuit wrote that [b]y using the word "is" in the phrase "real property that is the debtor's principal residence," Congress equated the terms "real property" and "principal residence." Put differently, this use of "is" means that the real property that secures the mortgage must *be only* the debtor's principal residence in order for the anti-modification provision to apply. We thus agree with the reasoning of the Bankruptcy Court for the District of Connecticut when it noted that § 1322(b)(2) "protects claims secured only by a security interest in real property that is the debtor's principal residence, not real property that *includes* or *contains* the debtor's principal residence, and not real property *on which the debtor resides.*" *In re Adebanjo,* 165 B.R. 98, 104 (Bankr.D.Conn.1994). A

claim secured by real property that is, even in part, *not* the debtor's principal residence does not fall under the terms of § 1322(b)(2). Consequently, "real property which is designed to serve as the principal residence not only for the debtor's family but for other families is not encompassed by the clause." *Id.*; *see also In re Maddaloni*, 225 B.R. 277, 280 (D.Conn.1998) ("[T]he use of 'is' without any modifier (e.g., 'in whole' or 'in part') does not evince an intent by Congress to apply the antimodification provision to real property that includes, but is more than, a debtor's residence."); *In re McGregor*, 172 B.R. 718, 720 (Bankr.D.Mass.1994) (relying on plain language of § 1322(b)(2) to permit modification of claim secured by "the debtor's residence and property which has 'inherently income producing' power"); *In re Legowski*, 167 B.R. 711, 714 (Bankr. D.Mass.1994) (same).

*In re Scarborough*, 461 F.3d 406, 411 (3rd Cir.2006) (emphasis in original). Cases following *Scarborough's* line of reasoning include: *In re Bullard*, 494 B.R. 92, 97 (1st Cir. BAP 2013) (assuming without discussion that if residential real estate includes a unit separate from the one in which the debtor resides, the lender's claim is not secured solely by the debtor's primary residence); *In re Picchi*, 448 B.R. 870 (1st Cir. BAP 2011); *In re Mobley*, 2011 WL 5833976 (Bankr.N.D.Ill. Nov. 17, 2011) ("Although the Seventh Circuit has not yet considered the issue, other courts have

ruled that 1322(b)(2) does not apply to prohibit modification of the mortgage on a property where the Debtor only occupied one unit of a multi-unit dwelling.") (Schmetterer, J.); *In re Galaske*, 2011 WL 5598356 (Bankr.D.Vt. Nov. 16, 2011), *reversed on other grounds sub nom. JPMorgan Chase Bank, N.A. v. Galaske*, 476 B.R. 405 (D.Vt.2012) ("The court need not revisit these [1 322(b)(2) ] issues because Chase has not appealed this aspect of the Bankruptcy Court's 11/16/11 Order."); *In re Boardman*, 2011 WL 478987 (Bankr.N.D.Cal. Feb. 7, 2011).

Another Circuit came to the same conclusion before *Scarborough*. *Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1 (1st Cir. 1996). *Lomas* based its holding on the finding that § 1322(b)(2) is ambiguous, and thus the plain meaning approach to statutory interpretation was inconclusive. *Id.* at 4. "[T]he legislative history does not state with clarity how a mortgage on a mixed property, one with both residential and investment characteristics, should be treated. While Congress debated over whether to protect all real estate lenders or no real estate lenders and eventually compromised on protecting residential mortgages, Congress did not focus on what to do in the multi-family context." *Id.* at 5.[1]

Instead, *Lomas* found "guidance from another source: the amendments to Chapter 11 contained in the Bankruptcy Reform

---

1. TCF argues that because the Bankruptcy Code does not distinguish a single family residence from a multiunit building in its definition of "debtor's principal residence" at § 101(13A), it is appropriate to turn to the state law definition of the term. *See Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In contrast to the situation in *Nobelman*, however, the Bankruptcy Code defines the term "debtor's principal residence." There is no need to

resort to state law. *See Nobelman*, 508 U.S. at 329, 113 S.Ct. 2106 (quotation and citations omitted) ("The term 'rights' is nowhere defined in the Bankruptcy Code. In the absence of a controlling federal rule, we generally assume that Congress has left the determination of property rights in the assets of a bankrupt's estate to state law ..."). Federal law provides a definition, and the court must apply that definition to the statute.

Act of 1994." *Id.* at 6. In 1994, Congress added § 1123(b)(5) to Chapter 11.

> This amendment conforms the treatment of residential mortgages in chapter 11 to that in chapter 13, preventing the modification of the rights of a holder of a claim secured only by a security interest in the debtor's principal residence. Since it is intended to apply only to home mortgages, it applies only when the debtor is an individual. It does not apply to a commercial property, or to any transaction in which the creditor acquired a lien on property other than real property used as the debtor's residence.[13]

H.R. REP. 103–835, 46, 1994 U.S.C.C.A.N. 3340, 3354. In footnote 13, Congress cited *In re Hammond*, 27 F.3d 52 (3rd Cir. 1994), and *In re Ramirez*, 62 B.R. 668 (Bankr.S.D.Cal.1986), as examples of situations where the antimodification provision would not apply.

At the time *Ramirez* was decided, only two published cases had addressed § 1322(b)(2): *In re Ballard*, 4 B.R. 271 (Bankr.E.D.Va.1980), and *In re Glenn*, 760 F.2d 1428 (6th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). The *Ramirez* court concluded that both courts would have permitted modification "had the debtors been able to prove that the property was actually used for some purpose other than as the debtors' principal residence." 62 B.R. at 669. Since *Ramirez'* *actual use* of the property was as both residential and rental property, the anti-modification provision did not apply to her.

"Given this clear expression of congressional intent, the inference becomes quite strong that Congress believes the antimodification provision in Chapter 13 does not reach such multiunit properties." *Lomas,* 82 F.3d at 7.

*Scarborough* noted that a "handful" of courts found a broader reach for the anti-modification provision. 461 F.3d at 413–14. *See In re Macaluso*, 254 B.R. 799, 800 (Bankr.W.D.N.Y.2000) ("So long as the only collateral is a single parcel of real estate, it matters not that that parcel may fulfill many uses or be divided into many units."); *In re Guilbert,* 176 B.R. 302, 305 (D.R.I.1995) ("That the residence in which the debtor primarily resides is also a source of income to the debtor does not render it 'something other than a [primary] residence.' Regardless of its income-earning functions or its residents, the Property is, has been, and will continue to be Guilbert's primary residence.").

Other courts found flaws in both approaches and applied a case by case test. *Litton Loan Servicing, LP v. Beamon,* 298 B.R. 508 (N.D.N.Y.2003); *In re Zaldivar,* 441 B.R. 389 (Bankr.S.D.Fl.2011). Both *Beamon* and *Zaldivar* followed *In re Brunson,* 201 B.R. 351 (Bankr.W.D.N.Y. 1996), the first court to adopt the case by case approach. "[E]ach case must turn upon the intention of the parties: Was home-ownership the predominant intention (and rental income simply a means to that end) or was investment income or the operation of a business the predominant purpose of the transaction?" *Id.* at 353.

Two recent decisions also rejected the majority viewpoint that the antimodification provision does not reach multi-family properties:

> The Code, however, explicitly provides modification protection to claims secured only by an interest in real property that is the debtor's principal residence. § 1123(b)(5). It does not protect from modification "claim[s] secured only by a security interest in real property that is *exclusively* the debtor's principal residence," or "claim[s] secured only by a security interest in real property that is

the debtor's principal residence, *unless the debtor also uses the property for significant commercial purposes.*" Indeed, there is nothing in the Code indicating that, once a commercial use of a property becomes sufficiently "significant," that property ceases being the debtor's principal residence. Simply put, either a property is a debtor's principal residence or it is not; the existence of other uses on the property does not change that.

*In re Wages,* 479 B.R. 575, 581 (Bankr.D.Idaho 2012) (emphasis in original) (discussing identical provision in Chapter 11). *See In re Schayes,* 483 B.R. 209, 216 (Bankr.D.Ariz.2012) ("The better statutory analysis seems to be that other, additional actual uses have no relevance under the plain language of the Code, so long as there is an actual use as the debtor's principal residence.").

Indeed, the *Wages* court criticized *Ramirez*—the 1986 decision cited in the legislative history—for adding "non-textual requirements to the equation." 479 B.R. at 580. Nevertheless, even *Wages* acknowledged that a different result might obtain "where a debtor attempts to modify the mortgage on a multi-unit dwelling while living in one of those units.... Clearly, the anti-modification provision's practical and policy considerations as applied to multi-family dwellings are not the same as those applicable to a trucking business." *Id.* at 582.

Although disagreement about a provision's meaning does not necessarily lead to the conclusion that it is ambiguous, the court concludes that § 1322(b)(2) is in fact ambiguous. While *Wages* argues that the statute does not state that it protects real property that is *exclusively* the debtor's principal residence, neither does it state that it protects real property that is *partially* the debtor's principal residence.

The statute uses only the word "is" without any adverb, and that leads to an ambiguity. *See In re Owen,* 2002 WL 531570, *3 (S.D.Ill. April 5, 2002) ("The job of adverbs and adjectives is to increase specificity and eliminate ambiguity.").

 Legislative history is of no assistance when a statute is unambiguous. *See In re Equipment Acquisition Resources, Inc.,* 742 F.3d 743 (7th Cir.2014). However, "[w]hen the plain meaning of a statutory term is unclear, outside considerations can be used in an attempt to glean the legislative intent behind the use of the term. These can include the legislative history ...". *Emergency Services Billing Corp., Inc. v. Allstate Ins. Co.,* 668 F.3d 459, 465 (7th Cir.2012) (citations omitted). While the legislative history for § 1322(b)(2) is not helpful, this court agrees with *Lomas* that the legislative history to § 1123(b)(5) is instructive. The subsections are identical, accomplishing the same goal in Chapter 11 as in Chapter 13.

Recall that in the legislative history to § 1123(b)(5), as an example of a situation where the antimodification provision would not apply, Congress cited *In re Ramirez,* 62 B.R. 668. The *Ramirez* facts are similar to those before the court today. The debtor lived in a 3–flat. Her actual use of the real property was both residential and rental. Since the lender's claim was not secured only by property that was the debtor's principal residence, it could be modified.

This court rejects the minority theory that "either a property is a debtor's principal residence or it is not; the existence of other uses on the property does not change that." *Wages,* 479 B.R. at 581. Such a theory could lead—in Chapter 11, under the identical provision as in Chapter 13—to an absurd result if the debtor owns a 100 unit apartment complex and lives in

one of the units. *See Lomas,* 82 F.3d at 6 ("It is unlikely Congress intended the anti-modification provision to reach a 100–unit apartment complex simply because the debtor lives in one of the units. Limiting the antimodification provision to single-family dwellings creates a more easily administered test."). *Wages* acknowledged that this could be a problem, but determined that "the potential for harsh results can not be used as an excuse by the Court to torture the Code's language to reach a different rule in this case. Even if the Court does not agree with all of the possible outcomes produced by the statutory language, it is Congress, not this Court, that must repair any problems with the Code." [2] 479 B.R. at 583.

While the court agrees that it is Congress that must repair any problems with the Code, there is no problem to be fixed here. The language of § 1322(b)(2) is ambiguous, but the ambiguity is resolved by reference to the legislative history. The antimodification provision does not apply to principal residences that are not single family dwellings. Such a reading of the statute not only comports with the legislative history, it makes sense as a bright line rule and avoids absurd results. For all of the reasons stated above, the court adopts the majority position that § 1322(b)(2) "protects claims secured only by a security interest in real property that is the debtor's principal residence, not real property that *includes* or *contains* the debtor's principal residence, and not real property

*on which the debtor resides." Scarborough,* 461 F.3d at 411 (quotation omitted).

■ The final question before the court concerns the applicable date on which a snapshot should be taken of the debtor's use of the real property. Some cases look to the status of the property on the petition date, others on the date the security interest was granted.

*Scarborough* acknowledged that one possible objection to its reading of § 1322(b)(2) is that "homeowners poised to file for protection under Chapter 13 would, as a matter of course, seek temporary tenants prior to their filing." *Guilbert,* 176 B.R. at 305. *Scarborough* avoided this problem by determining that "the critical moment is when the creditor takes a security interest in the collateral." 461 F.3d at 412. This approach also comports with Justice Stevens' statement that the purpose of § 1322(b)(2) is to "encourage the flow of capital into the home lending market," *Nobelman,* 508 U.S. at 332, 113 S.Ct. 2106 (concurrence). "That focus on what the parties originally bargained for, and what those parties understood their rights to be, strikes this court as the most appropriate starting point when a debtor's principal place of residence is in dispute." *In re Proctor,* 494 B.R. 833, 840 (Bankr. E.D.N.C.2013).

Other courts, reasoning that "a creditor's right to payment ... is fixed at the petition date ... conclude that the determinative date for whether a claim is secured by a debtor's principal residence is, like all claims, fixed at the petition date."

---

**2.** *Wages* suggested that the "1 in a 100" situation would produce a result that is "sufficiently absurd to require the Court to look beyond the statute's plain language ...". 479 B.R. at 583 n. 12. Judge Flaum in the Seventh Circuit has warned the lower courts that absurdity is a very limited exception to the plain language rule, used only "where the alleged absurdity is obvious.... [T]he Supreme Court has

taught that the patent-absurdity exception is reserved for only the truly inane results of a literal construction." *Matter of Udell,* 18 F.3d 403, 412 (7th Cir.1994) (concurrence)). At what point would a bankruptcy judge determine that a debtor's residence in a multiunit building creates an absurd result? When the building has five units? Fifteen? Fifty?

*In re Abdelgadir,* 455 B.R. 896, 903 (9th Cir. BAP 2011).

Although *Scarborough's* and *Proctor's* method of using the loan transaction date is a "distinct minority," *In re Benafel,* 461 B.R. 581, 590 (9th Cir. BAP 2011), the court finds it more persuasive. First, the *Ramirez* court, cited approvingly in the legislative history, found "it particularly persuasive that the lender considered the debtor's rental income when making the loan." *In re Harriman,* 2013 WL 5509387 (Bankr.N.D.Cal. Oct. 1, 2013). Furthermore, if the determinative date is the petition date, it is subject to manipulation. An individual contemplating bankruptcy may take in a tenant on the eve of filing his petition in order to avoid the application of the antimodification provision to his home mortgage. In this case it does not matter—the 24th Place Property appears to have been a two-flat both at the time the parties entered into privity with each other as well as on the petition date. Nevertheless, the court holds that the date on which the security interest was created is the relevant date for the court to use in determining whether the claim is secured by a debtor's principal residence.

## CONCLUSION

The court holds that the antimodification provision of § 1322(b)(2) protects only claims secured by a security interest in real property that is, in its entirety, the debtor's principal residence. It does not protect claims secured by a security interest in real property that *contains* the debtor's principal residence but is not exclusively that principal residence. The date on which the character of the real property is fixed for purposes of this subsection is the date on which the security interest was created.

For all of the reasons stated above, the court grants the Abregos' motion to confirm plan. This order shall be construed as "the written opinion confirming plan and overruling TCF objection" for purposes of beginning the appeal period as described in the Order Confirming Chapter 13 Plan.