**IN RE: John R. HOCK and Doreen T. Zic–Hock, Debtor.**

**Case No.: 14–32157–BKC–PGH**

United States Bankruptcy Court, S.D. Florida, West Palm Beach Division.

Signed August 15, 2017

Julianne R. Frank, Malinda L Hayes, Esq., Markarian, Frank, White–Boyd, & Hayes Palm Beach Gardens, FL, for Debtor.

## ORDER ON MOTION TO VALUE AND DETERMINE SECURED STATUS OF LIEN (ECF NO. 191)

Paul G. Hyman, Jr., Judge, United States Bankruptcy Court

**THIS MATTER** came before the Court upon the *Second Renewed Motion to Value*

*Collateral, Determine Secured Status of Lien on Real Property and Modify the Rights of US Bank National Association and Legacy Bank of Florida* (the "Motion to Value and Determine Secured Status of Lien") (ECF No. 191) filed by John R. Hock and Doreen T. Zic–Hock (the "Debtors"). The Motion to Value and Determine Secured Status of Lien seeks to: (1) determine the value of real property located at 226 NE 1st Avenue, Delray Beach, Florida 33444 (the "Subject Property"); (2) determine that the first priority lien of US Bank National Association ("US Bank") is secured only to the extent of the value of the Subject Property; and (3) determine that Legacy Bank's second mortgage is wholly unsecured and thus void and extinguished. The Court took the matter under advisement in order to determine a threshold legal issue.[1]

## UNDISPUTED FACTS[2] AND PROCEDURAL BACKGROUND

The Debtors filed their chapter 11 bankruptcy petition on October 2, 2014 (the "Petition Date"). As of the Petition Date, the Debtors resided in the Subject Property. As of the Petition Date, the Debtors also leased portions of the Subject Property for investment purposes.

The Debtors purchased the Subject Property in 2005. The Debtors borrowed $499,950.00 from JPMorgan Chase Bank, N.A. ("JPMorgan") to purchase the Subject Property and executed a mortgage in favor of JPMorgan (the "Mortgage") on April 15, 2005. Part 6 of the Mortgage requires that the borrowers occupy the Subject Property as their primary residence within 60 days of executing the Mortgage and then for at least one year after the date of initial occupancy unless the lender otherwise agrees in writing. Moreover, contemporaneously with the execution of the Mortgage, the Debtors and JPMorgan executed a 1–4 Family Rider as additional security for the loan. The 1–4 Family Rider removed the occupancy requirement of Part 6 of the Mortgage for non-owner occupied investment properties. An Assignment of Mortgage was recorded on March 14, 2013, at Official Record Book 25872, Page 0020 in Palm Beach County, Florida, assigning the mortgage to US Bank.

The Subject Property is a historic home with a large main residence in the front and a carriage house in the back. When the Subject Property was purchased, it included two apartments in the carriage house. The Debtors renovated the carriage house to include a third apartment. The Debtors reside in the large main residence in the front of the Subject Property and have continuously resided in the Subject Property since the execution of the Mortgage. The three apartments in the carriage house are all presently leased out to non-insider tenants. On the Petition Date, two of the units were leased to tenants and remain leased to the same tenants. The third unit was vacated in July 2014 after seven years of occupancy by a single tenant beginning in 2007 and was undergoing a renovation on the Petition Date. In December 2014, the Debtors received approv-

---

1. US Bank and the Debtors do not agree on the valuation of the Subject Property. The Debtors' Motion asserts that the value of the Subject Property is $555,000.00. In its *Response* (ECF No. 198), the US Bank asserts that the value of the Subject Property "is closer to $870,000[.00]." Accordingly, the Court's Order here is limited to the threshold

legal issue. The *Joint Statement of Facts* (ECF No. 320) does not address the value of the Subject Property.

2. The facts outline in this section are undisputed by virtue of the *Joint Statement of Facts* (ECF No. 320) filed jointly by the Debtors and US Bank.

al from the Court to seasonally rent the third until through March 2015.

A 2006 appraisal of the Subject Property, commissioned by Legacy Bank, indicates that the Subject Property is zoned for commercial and residential use. The appraisal described the main unit as the "residential structure," and the scope of the report was limited to the Subject Property's use as a single family residence. However, it describes the Subject Property as having two rental units in the "garage apartment." Legacy Bank commissioned an updated appraisal of the Subject Property in 2010, which indicates that "the garage portion of the detached building has been converted to a rental apartment." Again, the 2010 appraisal was limited to the Subject Property's use as a single family residence.

The Debtors filed their Motion to Value and Determine Secured Status of Lien on August 17, 2015. Shortly thereafter, US Bank filed its *Response* (ECF No. 198), disputing both the amount of the valuation of the Subject Property and the ability of the Debtors to value the Subject Property pursuant to 11 U.S.C. § 1123(b)(5). At the hearing on the Motion, the Court indicated that the matter would be re-noticed at the request of the parties. After a subsequent hearing held on May 23, 2017, the Court issued an *Order Setting Briefing Schedule* (ECF No. 315). Thereafter, the parties submitted briefing on the threshold legal issue of whether the Debtors may modify US Bank's lien on the Subject Property notwithstanding the anti-modification provisions of § 1123(b)(5).

### CONCLUSIONS OF LAW

Pursuant to 11 U.S.C. § 1123(b)(5), a chapter 11 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence[.]" (emphasis added). US Bank contends that its claim is secured only by a security interest in the Subject Property, which is real property that is the Debtors' principal residence, and thus, that its rights may not be modified in the Debtors' chapter 11 plan. The Debtors, on the other hand, contend that because the Subject Property is not only their principal residence but is also income producing property, § 1123(b)(5)'s clause prohibiting modification of the rights of secured creditors does not apply. For the reasons discussed in detail below, the Court agrees with US Bank.

Courts have not reached a consensus on how to treat claims secured only by real property which is both the debtor's principal residence and income producing property, and the Eleventh Circuit Court of Appeals has not addressed the issue. The issue requires the Court to interpret § 1123(b)(5), and the Court must do so by first following traditional canons of statutory interpretation.

The " 'cardinal canon' of statutory interpretation is that 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.' " *U.S. v. Aldrich,* 566 F.3d 976, 978 (11th Cir. 2009) (*quoting Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). The Supreme Court of the United States has held that the starting point of statutory interpretation must always be "the language of the statute itself." *Randall v. Loftsgaarden,* 478 U.S. 647, 656, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986). When examining the language of the statute itself, the Court's "task 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " *Med. Transp. Mgmt. Corp. v. Comm'r of I.R.S.,* 506 F.3d 1364, 1368 (11th Cir. 2007) (*quoting Robinson v.*

*Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997)). If the statutory language is unambiguous, the Court's inquiry must cease. *Id.* If the statutory language is ambiguous, the Court may look to the legislative history and documented purpose of the statute. *In re Kaplan*, 331 B.R. 483, 486 (Bankr. S.D. Fla. 2005) (Mark, J.). Finally, it should be noted that "[a] Code provision is not rendered ambiguous merely because courts disagree as to its meaning." *In re Wages*, 479 B.R. 575, 582 (Bankr. D. Idaho 2012), *aff'd*, 508 B.R. 161 (9th Cir. BAP 2014).

■ The Court finds that the language of § 1123(b)(5) is unambiguous. Section 1123(b)(5) provides that a debtor through a chapter 11 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence [.]" Stated differently, the claims which may not be modified in a chapter 11 plan are claims secured only by a security interest in real property that is the debtor's principal residence. The phrase "secured only by a security interest in real property that is the debtor's principal residence" modifies the word "claim" and describes which type of claim is non-modifiable. *See In re Wages*, 479 B.R. at 579. The word "only" modifies the word "secured" and clarifies that a claim cannot be modified if it is secured by "a security interest in real property that is the debtor's principal residence" and not secured by anything else. The word "only" does not modify any other word. *See In re Macaluso*, 254 B.R. 799, 800 (Bankr. W.D.N.Y. 2000) (analyzing the analogous chapter 13 antimodification provision and noting that "[t]he key factor in interpreting section 1322(b)(2) is placement of the word 'only' [because] 'only' modifies 'secured' and nothing else"). If Congress had meant to apply the anti-modification provision to claims secured only by real property used *only* or *exclusively* as the debtor's principal residence, Congress could easily have said that a chapter 11 debtor may modify the rights of holders of secured claims, "other than a claim secured only by a security interest in real property that is exclusively the debtor's principal residence." Moreover, the term "debtor's principal residence" is defined in the Bankruptcy Code as "a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property." 11 U.S.C. § 101(13A). The definition of "debtor's principal residence" does not include a provision that a debtor's principal residence must be a structure that is used exclusively as the principal residence of the debtor. Therefore, the definition contemplates that a debtor's principal residence may be a residential structure that the debtor uses as his principal residence plus incidental, non-residential property.

■ Courts which consider the issue and begin with a statutory analysis of the plain language tend to reach the same conclusion—that the plain language is unambiguous and that the anti-modification protections thus apply to any loan secured only by real property that the debtor, exclusively or non-exclusively, uses as his principal residence. *See e.g., In re Addams*, 564 B.R. 458, 466 (Bankr. E.D.N.Y. 2017) (analyzing the analogous chapter 13 anti-modification provision); *(In re Brooks*, 550 B.R. 19, 25 (Bankr. W.D.N.Y. 2016) (analyzing the analogous chapter 13 anti-modification provision); *In re Kelly*, No. CV 15-06419-DD, 2016 WL 2893984, at *6 (Bankr. D.S.C. May 11, 2016); *In re Harriman*, 2014 WL 1312103, at *3 (Bankr. N.D. Cal. Apr. 1, 2014); *In re Schayes*, 483 B.R. 209, 216 (Bankr. D. Ariz. 2012); *In re Macaluso*, 254 B.R. at 800) (analyzing the

analogous chapter 13 anti-modification provision). The United States Bankruptcy Court for the District of Idaho, after examining the plain language of § 1123(b)(5), concluded that the text is clear and unambiguous and that the protections of § 1123(b)(5) must be extended to any loan secured only by real property that the debtor uses, exclusively or non-exclusively, as a principal residence. *In re Wages*, 479 B.R. at 580. The Wages Court, noting that "most courts reviewing the anti-modification provision have adopted this more reasonable interpretation," offered a thorough explanation as to why any other approach is untenable:

> There is another view held by some courts about how to construe § 1123(b)(5), though. These courts focus on the particular words in the statute, and, in this Court's view, have seemingly convoluted the interpretation of the anti-modification provision. These courts deem the terms "real property" and "debtor's principal residence" to be coterminous, which, they argue, limits the provision's protection to those claims secured by property used *only* as a debtor's principal residence. *See, e.g., Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough)*, 461 F.3d 406, 411 (3d Cir.2006) (focusing on Congress' use of the word "is" in the phrase "real property that is the debtor's principal residence," and finding that, by using "is," Congress equated "real property" and "principal residence," meaning that, for the anti-modification provision to apply, the property "must be only the debtor's principal residence" and have no other use (emphasis in original)) ....

> Despite these other decisions, the Court does not consider the different terms used in § 1123(b)(5) to be equivalent. Under the Code, "debtor's principal residence":

> (A) means a residential structure if used as the principal residence by the debtor, including incidental property, *without regard to whether that structure is attached to real property*, and
> (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer if used as the principal residence by the debtor.

§ 101(13A) (emphasis added). This statutory definition, which refers to a "structure," regardless of the presence of, or the structure's attachment to, real property, obviously contemplates situations where a debtor's principal residence is not the equivalent of "real property." ...

In addition, a hyperliteral interpretation of § 1123(b)(5) equating "real property" with a "debtor's principal residence" could lead to absurd results when applied. If the Code's anti-modification provision's protections extend solely to claims secured by the *structure* a debtor uses as his or her principal residence (*i.e.*, the house), the provision would have no application to most residential mortgage loans, which are typically secured not only by a residential structure, but also by the real property on which the structure sits ....

... [M]any [courts] have had difficulty applying the provision when a property has multiple uses. In such cases, several courts ... have added non-textual requirements to the equation, finding that, if a property had "significant actual commercial use" or "inherent income producing potential," a claim secured by the property may be modified ....

Inherent in this approach to construing the Code is the courts' assumption that, at some point, for multi-use properties, the intensity of a commercial use may somehow transition a property from the

debtor's principal residence, to something other than his or her principal residence. The Code, however, explicitly provides modification protection to claims secured only by an interest in real property that is the debtor's principal residence. § 1123(b)(5). It does not protect from modification "claim[s] secured only by a security interest in real property that is *exclusively* the debtor's principal residence," or "claim[s] secured only by a security interest in real property that is the debtor's principal residence, *unless the debtor also uses the property for significant commercial purposes.*" Indeed, there is nothing in the Code indicating that, once a commercial use of a property becomes sufficiently "significant," that property ceases being the debtor's principal residence. Simply put, either a property is a debtor's principal residence or it is not; the existence of other uses on the property does not change that.

Additionally, relying on bankruptcy courts across the country to make case-by-case determinations as to whether a particular mixed use property crosses some undefined threshold from a "principal residence" to some other type of use is likely unworkable. The Code provides no indication of where an appropriate line between "principal residence" and "commercial activity" would be. ... Of course, the only standard identified in the Code is whether the property is the debtor's principal residence. Restricting the application of the Code's anti-modification provision to a bright-line determination of whether, as a matter of fact, a claim is secured by property used by a debtor as his principal residence provides the sort of objective standard necessary for consistent judicial decisions and stable credit markets.

*Id.* at 579–82 (underline emphasis added).

The Court acknowledges that instead of applying the plain language of the statute, other courts, including some within the Southern District of Florida,[3] have applied one of two other approaches: (1) the principal-residence-only bright line approach and (2) the case-by-case approach. *See In re Addams,* 564 B.R. at 465–67 (describing these two approaches and courts which have applied them). The Court finds, however, that for the reasons articulated above by this Court and by the Wages Court, these two approaches would require the Court to reject the plain, unambiguous language of the statute. To apply the principal-residence-only bright line approach, the Court would have to unilaterally add the word "only" or "exclusively" to the text of § 1123(b)(5) so that the statute would effectively read: a chapter 11 debtor may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is exclusively the debtor's principal residence." To apply the case-by-case approach, the Court would similarly have to add words to § 1123(b)(5) so that the statute would effectively read: a chapter 11 debtor may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal resi-

---

**3.** Notably, Judge Olson in *In re Zaldivar,* 441 B.R. 389 (Bankr. S.D. Fla. 2011) followed the case-by-case approach when applying the analogous chapter 13 anti-modification provision. The Court in *Zaldivar,* however, does not engage in a statutory analysis of the plain language. The Court simply considers the three different approaches and decides which approach is best. Judge Cristol in *In re Ramirez,* No. 13-20891-AJC, 2014 WL 1466212, at *1 (Bankr. S.D. Fla. Apr. 7, 2014), neither engages in a statutory analysis of the plain language nor considers any of the other two approaches. Instead, Judge Cristol assumes, citing to the *Zaldivar* case, that a case-by-case approach is appropriate.

dence <u>unless the debtor also uses the property for significant commercial purposes.</u>" The Court would then have to devise a standard for what constitutes a "significant" commercial purpose. It is not the role of the Court to change the meaning of an unambiguous statute by adding words and requirements that Congress could have included but chose not to.

For these reasons, the Court finds that the plain language of § 1123(b)(5) is unambiguous. As noted above, the Court must presume that Congress says in a statute what it means and means in a statute what it says. The Court does not presume that Congress meant to make the anti-modification provision of § 1123(b)(5) applicable to claims secured only by a security interest in real property that is <u>exclusively</u> the debtor's principal residence. That is not the language that Congress used when it wrote the text of § 1123(b)(5), and Congress easily could have used that language if that was what Congress intended. If the Court were to conclude that the text of § 1123(b)(5) is ambiguous or that § 1123(b)(5)'s anti-modification provision applies only when the real property at issue is exclusively used at the debtor's principal residence, the Court would be presuming that Congress intended something other than what Congress said. Such presumption would be inappropriate.

## CONCLUSION

Accordingly, the Court finds that the Debtors are prohibited under § 1123(b)(5) from modifying the rights of US Bank as the claim held by US Bank is secured only by a security interest in real property that is the Debtors' principal residence. The Court, being fully advised in the premises and for the reasons discussed above, hereby **ORDERS AND ADJUDGES** that:

1. To the extent the Debtors seek to modify the rights of US Bank with respect to the Subject Property, the Debtors' Motion to Value and Determine Secured Status of Lien is **DENIED.**

2. This Order does not determine the value of the Subject Property.

3. This Order does not determine whether Legacy Bank's second mortgage is wholly unsecured.

4. Upon completion of discovery, the parties are directed to contact this Court's Courtroom Deputy to schedule an evidentiary hearing to determine the value of the Subject Property and whether Legacy Bank's second mortgage is wholly unsecured.