[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13887

_____

PATRICIA BENTON LEE,

Plaintiff-Appellant,

*versus*

U.S. BANK NATIONAL ASSOCIATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:20-cv-00222-HL

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and ED CARNES, Circuit Judges.

LUCK, Circuit Judge:

The bankruptcy code allows debtors to modify or restructure their debts. Yet this grace has its limits. One of those limits is the anti-modification provision in chapter 11. Under the anti-modification provision, a chapter 11 reorganization plan may not "modify the rights of holders of . . . a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1123(b)(5). This case asks us to decide the requirements that must be met before a bankruptcy court can apply the anti-modification provision. We hold that there are three. "[F]irst, the security interest must be in real property; second, the real property must be the only security for the debt; and third, the real property must be the debtor's principal residence." *In re Wages*, 508 B.R. 161, 165 (B.A.P. 9th Cir. 2014). Because the mortgage U.S. Bank held on Patricia Lee's real property met these three requirements, the bankruptcy court did not err in concluding that the anti-modification provision applied to the bank's secured claim. We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*Chapter 11 of the Bankruptcy Code*

Under chapter 11 of the bankruptcy code, the debtor may file for bankruptcy in the hopes of reorganizing her debts. *See* 11 U.S.C. § 301. To start the process on a voluntary basis, the debtor must file a petition with the bankruptcy court. *See id.* Along with the petition, the debtor must include several schedules that

spell out her assets, liabilities, income, and expenditures.  Fed. R. Bankr. P. 1007(b)(1), (c).  And the debtor must also list her home address.

"Filing for bankruptcy under [c]hapter 11 . . . automatically creates 'the estate,' which . . . . consists of essentially all the debtor's property and rights to property."  *Auriga Polymers Inc. v. PMCM2, LLC ex rel. Beaulieu Liquidating Tr.*, 40 F.4th 1273, 1278 (11th Cir. 2022).  Once the debtor files a voluntary petition under chapter 11, she "enjoys an automatic stay against actions to enforce, collect, assess or recover claims against the debtor or against property of the estate."  *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006).

This automatic stay prevents creditors from taking actions to enforce debts owed to them, and "actions taken in violation of the automatic stay are void and without effect."  *See id.* (alteration adopted) (quoting *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982)).  That includes foreclosure actions to enforce secured claims against real property.  *See* 11 U.S.C. § 362(a)(3)–(5).  "Section 362(c)(1) provides that the stay of an act against the property of the estate continues until such property is no longer property of the estate."  *White*, 466 F.3d at 1244.

But to lift the automatic stay and enforce debts they hold, creditors may apply for relief so that they can take actions that would otherwise be voided by the automatic stay.  11 U.S.C. § 362(d).  For example, a bankruptcy court may grant relief from the automatic stay "for cause, including the lack of adequate

protection of an interest in property of such party in interest." *Id.* § 362(d)(1). And the court may grant relief "with respect to a stay of an act against property" if "the debtor does not have an equity in such property" and the "property is not necessary to an effective reorganization." *Id.* § 362(d)(2).

A debtor "does not have an equity" in the property when "the creditor is undersecured" by the value of the property. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375 (1988). And "property is not necessary to an effective reorganization" unless it is "essential for an effective reorganization" and the reorganization is "*in prospect*"—in other words, there must be "a reasonable possibility of a successful reorganization within a reasonable time." *Id.* at 375–76 (quotations omitted).

Ideally, the end of the chapter 11 process is a judicially approved "plan" that restructures the debtor's obligations. 11 U.S.C. §§ 1123, 1129. But not every obligation of the debtor can be restructured by the bankruptcy court under chapter 11. A plan, for example, can "modify the rights of holders of secured claims," but, under the anti-modification provision, it cannot modify those rights if a creditor's claim is "secured only by a security interest in real property that is the debtor's principal residence." *Id.* § 1123(b)(5).

*Patricia Lee's Mortgage*

In 2007, Patricia Lee mortgaged her property—a forty-three-acre tract of land in rural Georgia. As part of the mortgage, Lee signed a note that was secured by a deed on the property. The

security deed required Lee to occupy, establish, and use the property as her principal residence and gave the lender, Quicken Loans, the power to foreclose on the property if Lee defaulted on the note. The mortgage was later assigned to U.S. Bank.

Lee, as she was required to do, used the property as her principal residence. She lived in a small brick house on two and one-half acres on the western edge of the property. The rest she leased to a farming company, and that portion of her land was continuously farmed.

Eventually, Lee defaulted on the mortgage. By August 2020, she owed 110 payments on the note for a total amount of $253,070.25. Instead of paying, Lee filed a chapter 11 voluntary bankruptcy petition to restructure her debts. The petition listed her property as her residence with an estimated value of $138,000. And the voluntary petition triggered the automatic stay. *See* 11 U.S.C. § 362(a).

Then, two things happened. First, Lee filed a proposed reorganization plan to restructure her debts, including the money she owed U.S. Bank under the mortgage. Lee's plan called for payments of $1,000 per month for six months followed by a balloon payment of $138,000 on the seventh month "in full satisfaction of" U.S. Bank's claim.

Second, U.S. Bank moved under 11 U.S.C. section 362(d) for relief from the automatic stay so that it could foreclose on Lee's property. In support, U.S. Bank argued that: its claim was not adequately protected because there was little or no equity in the

property; the anti-modification provision prevented the bankruptcy court from approving a chapter 11 reorganization plan that modified U.S. Bank's claim; and the bank's claim was undersecured by Lee's property and Lee could not establish the property was necessary for an effective reorganization.

The bankruptcy court held an evidentiary hearing on U.S. Bank's motion. Lee's son testified that Lee lived on two and one-half acres of the property and that the remaining land had always been farmed. Lee also introduced an aerial photograph that confirmed her house took up only a small portion of the land on the western edge of the property, and she introduced tax documents that described all but two acres of the property as either timberland or agricultural land.

In closing arguments, U.S. Bank asserted that the "plain language" of the anti-modification provision applied to any property a debtor used as a principal residence, whether or not the debtor also used the property for some other purpose. Lee countered that section 1123(b)(5)'s anti-modification provision applied to a claim "secured only by the [d]ebtor's principal residence" and her property wasn't subject to the provision because, "from an acreage standpoint," it was "primarily farmland."

The bankruptcy court agreed with U.S. Bank that the plain language of section 1123(b)(5) did not require that Lee use the property *exclusively* as her principal residence. And, because it was undisputed that the property was Lee's principal residence, section 1123(b)(5) applied to Lee's mortgage. The bankruptcy court

21-13887              Opinion of the Court                    7

therefore found that it could not confirm Lee's proposed plan and that Lee failed to establish a prospect of reorganization. Thus, the bankruptcy court granted U.S. Bank's motion for relief from the automatic stay.

Lee appealed the bankruptcy court's order to the district court. She argued that the bankruptcy court erred in concluding that section 1123(b)(5)'s anti-modification provision applied to U.S. Bank's secured claim because the anti-modification provision "does not apply to mixed-use properties where the debtor resides in part of the property and derives busines[s] income from other parts of the property." U.S. Bank responded that the bankruptcy court properly relied on section 1123(b)(5)'s plain language, which it argued did not require Lee to use the property *only* or *exclusively* as her principal residence. The district court agreed with the bankruptcy court and affirmed the order granting relief from the automatic stay. Lee timely appealed.

## STANDARD OF REVIEW

"When we review an order of a district court entered in its role as an appellate court reviewing a bankruptcy court's decision, we independently examine the bankruptcy court's factual and legal determinations, applying the same standards of review as the district court." *In re Walter Energy, Inc.*, 911 F.3d 1121, 1135 (11th Cir. 2018). "We review de novo conclusions of law whether by the bankruptcy court or the district court." *Id.* (emphasis omitted).

And "[w]e review the bankruptcy court's factual findings under the clearly erroneous standard." *Id.*

## DISCUSSION

Like the district court, we take up the same question the bankruptcy court answered. What requirements did U.S. Bank have to meet for the anti-modification provision to apply to its secured claim on Lee's real property?

We begin, where we always must, with the text of the statute. *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1188 (11th Cir. 2018). Under section 1123(b)(5)'s anti-modification provision, a chapter 11 reorganization plan may not "modify the rights of holders of . . . a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1123(b)(5). Congress clarified the meaning of "debtor's principal residence" in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23. A "debtor's principal residence" is "a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property." 11 U.S.C. § 101(13A)(A). "[I]ncidental property," in turn, means

> with respect to a debtor's principal residence—
>
> > (A)    property commonly conveyed with a principal residence in the area where the real property is located;

>    (B)    all easements, rights, appurtenances, fix-
>    tures, rents, royalties, mineral rights, oil or gas
>    rights or profits, water rights, escrow funds, or
>    insurance proceeds; and
>
>    (C)    all replacements or additions.

*Id*. § 101(27B).

Read together, section 1123(b)(5) has "three distinct require-ments." *Wages*, 508 B.R. at 165. "[F]irst, the security interest must be in real property; second, the real property must be the only se-curity for the debt; and third, the real property must be the debtor's principal residence." *Id*.; *see also In re Davis*, 386 B.R. 182, 185–86 (B.A.P. 6th Cir. 2008) (same);[1] *In re Brooks*, 550 B.R. 19, 25 (Bankr. W.D.N.Y. 2016) (same); *In re Snowden*, 546 B.R. 39, 44 (Bankr. E.D. Ky. 2016) (same).

As the bankruptcy court found, the three requirements of section 1123(b)(5) were met here. U.S. Bank's claim was secured by Lee's real property, so the first requirement was met. The second requirement was satisfied because Lee's property was the only se-curity for U.S. Bank's claim. And Lee's real property hit the third requirement because she used it as her principal residence. Lee ob-tained, and mortgaged, her house and land together. The security

---

[1] Because section 1123(b)(5) is identical to section 1322(b)(2)—the anti-modi-fication provision in chapter 13—we consider the decisions interpreting the chapter 13 anti-modification provision as persuasive in reading the chapter 11 anti-modification provision. *See Wages*, 508 B.R. at 165 n.6.

deed that secured U.S. Bank's claim required her to establish the property as her principal residence. Her son testified at the bankruptcy court's evidentiary hearing that Lee lived on the property. And Lee identified the property as her residence in her voluntary petition.

Pushing back on this conclusion, Lee argues that we (and the bankruptcy court) are misreading the requirements for section 1123(b)(5). She urges us, instead, to adopt two other approaches courts have taken in applying the anti-modification provision. But the other approaches miss the mark.

Under the first approach, commonly known as the *Scarborough* approach, some courts have read the anti-modification provision to require that the debtor use her real property *only* or *exclusively* as her principal residence and for no other purpose. The First Circuit, after finding chapter 13's identical anti-modification provision ambiguous, reached this result by looking to the legislative history of section 1123(b)(5) for guidance. *Lomas Mortg., Inc. v. Louis*, 82 F.3d 1, 4–7 (1st Cir. 1996). The First Circuit read the legislative history as a "clear expression of congressional intent" that the anti-modification provision did "not reach . . . multi-unit properties"—that is, real property that is the debtor's principal residence but also has other residential units that are not the debtor's residence. *Id.* at 7.

Although few courts have followed *Lomas*, the Third Circuit reached the same result by "focus[ing] on" the anti-modification provision's "plain language." *In re Scarborough*, 461 F.3d 406, 411 (3d

21-13887                Opinion of the Court                11

Cir. 2006) (quotation omitted). In *Scarborough*, the Third Circuit reasoned that "[b]y using the word 'is' in the phrase 'real property that *is* the debtor's principal residence,' Congress equated the terms 'real property' and 'principal residence.'" *Id.* By focusing on the "is," the *Scarborough* court concluded that "[a] claim secured by real property that is, even in part, not the debtor's principal residence does not fall under the terms of" the anti-modification provision. *Id.* (emphasis omitted). In other words, the anti-modification provision required that the debtor's real property had to be used *only* or *exclusively* as her principal residence. *See id.*

We disagree with the *Scarborough* approach's reading of the anti-modification provision. First, unlike the First Circuit, we need not rely on legislative history to understand section 1123(b)(5) because its text is unambiguous. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969 (11th Cir. 2016) ("[W]e do not consider legislative history when the text [of a statute] is clear.").

Second, the average speaker of American English would not understand "is," as used in section 1123(b)(5)—"real property that is the debtor's principal residence"—to mean *only* or *exclusively* and nothing else. *See United States v. Pate*, 84 F.4th 1196, 1201 (11th Cir. 2023) (en banc) ("[W]e ask whether that phrase—as used here, and in context—would be understood by the average speaker of American English to include *former* officers or employees of the United States."); *see also Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995) ("When interpreting the text, we give undefined terms their plain, ordinary, and most natural meaning.").

For example, let's say we told the average man on the street that Atlanta is the capital of Georgia.  The man wouldn't understand our statement to mean that Atlanta is *only* or *exclusively* Georgia's capital and nothing else.  Rather, he would understand that Atlanta is other things as well, like the transportation hub of the Southeast, the seat of Fulton County, and our court's home base.

By the same token, the average man would understand that "real property that is the debtor's principal residence" does not mean that the real property is *only* or *exclusively* the debtor's residence and nothing else.  He would understand that the property could also be the principal residence of the debtor's roommate, the place where the debtor has her weekend lemonade stand, and the spot where she farms honey from her beehive.

Dictionary definitions from around when the anti-modification provision was enacted also bear out that "is" does not mean *only* or *exclusively*.  "Is" is a conjugated form of the verb "be."  *See* Webster's II New Riverside University Dictionary 645 (1994); Webster's Third New International Dictionary 1197 (1993).  And "be" is defined by contemporaneous dictionaries to mean "[t]o belong to a given class or group" or "[t]o have or exhibit a given quality or characteristic."  Webster's II New Riverside University Dictionary 159; *see also* Webster's Third New International Dictionary 189 (defining "be" in relevant part as "to have a meaning that includes or implies the meaning of" and to "have a (specified) qualification or characterization").  But to have a quality does not mean the thing being described *only* or *exclusively* has that quality and no other

21-13887                Opinion of the Court                13

qualities.  A debtor's real property may have as one of its qualities that it is her principal residence.  But it can also have other qualities, like having a lemonade stand or a beehive.[2]

The *Scarborough* court and the dissenting opinion point to a different definition.  "Is," they say, means to "equate[]."  *See Scarborough*, 461 F.3d at 411 (finding that Congress used "is" to "equate[] the terms 'real property' and 'principal residence'"); *see also* Webster's II New Riverside University Dictionary 159 (also defining "be" to mean "[t]o equal in meaning or identity"); Webster's Third New International Dictionary 189 (also defining "be" to mean "to equal in meaning," to "have the same connotation . . . as," and "to constitute the same idea or object as").  But, again, to have equal meaning or identity does not mean the thing being described *only* or *exclusively* has that meaning or identity and no other.  Atlanta may be equal in meaning to the Georgia state capital.  But it is also equal in meaning to the seat of Fulton County and the home of the Eleventh Circuit.[3]

---

[2]  The dissenting opinion oddly claims that we've substituted the word "includes" for "is."  But we haven't.  What we've done is define "is" as it was understood when section 1123(b)(5) was enacted—to have a given quality or characteristic.  No more or less.

[3]  The dissenting opinion then goes on to say that is-as-equates means "*the same thing*, with *the same boundaries.*"  But that's not how the average man on the street would understand "is."  To use the same example, our courthouse takes up only one block of downtown Atlanta.  Yet the average Atlantean would understand that "Atlanta is the home of the Eleventh Circuit" does not mean that Atlanta and our courthouse are the same thing with the same boundaries.

The *Scarborough* approach—reading "is" to mean *only* or *exclusively*—is even further off the mark after the 2005 amendments to the bankruptcy code. In the 2005 amendments, Congress defined "debtor's principal residence" to include "incidental property," which can itself include other property interests in addition to the debtor's residence.[4] *See Wissel*, 619 B.R. at 312–13 ("These additions represent a clear [c]ongressional statement that 'real property' and 'debtor's principal residence' are no longer coterminous."); *see also, e.g.*, *Wages*, 508 B.R. at 166 (rejecting this interpretation because the bankruptcy code "does not equate the term 'real property' with 'debtor's principal residence'"). The "debtor's principal residence" can now include, for example, "[e]scrow funds,

---

And even if the average Atlantean would understand "is" that way, it wouldn't help Lee. The bankruptcy court found that Lee "use[d] the property"—not just two acres of it—"as her principal residence", and that finding is supported by the record. Lee mortgaged the entire parcel and agreed to establish it as her "principal residence"; she gave the property's address as the place she "live[d]" when filing for bankruptcy; and she described the entire property her mortgage covered as the "[d]ebtor's residence" on her schedule of liabilities.

[4] Indeed, the *Scarborough* court acknowledged that its holding reflected an interpretation of the bankruptcy code as it existed before 2005. Because the bankruptcy petition in that case was filed before the 2005 amendments became effective, the court emphasized that it would "leave for another day the question of whether, or how, [the amendments] altered the scope of the anti-modification provision." *Scarborough*, 461 F.3d at 412 n.2. While the Third Circuit has not revisited *Scarborough* since then, a bankruptcy court in the Third Circuit has found that *Scarborough*'s reading of the anti-modification provision was abrogated by the 2005 amendments to the bankruptcy code. *See In re Wissel*, 619 B.R. 299, 312–13 (Bankr. D.N.J. 2020).

21-13887                Opinion of the Court                15

insurance proceeds, and miscellaneous proceeds." *See In re Birmingham*, 846 F.3d 88, 99 (4th Cir. 2017).  And it can now include the rent the debtor makes from leasing the property, the profits from oil and gas extracted from the property, and the rights to minerals and water on the property.  *See* 11 U.S.C. § 101(27B)(B); *see also In re Shull*, 493 B.R. 453, 459–60 (Bankr. M.D. Pa. 2013) (finding that the anti-modification provision applied to a security interest in "fixtures" because under section 101(27B)(B) a debtor's principal residence includes fixtures as incidental property).[5]

Turning away from the meaning of "is," Lee pivots by arguing that the term "only" as used in section 1123(b)(5) modifies how the real property must be used so that the property *only* or *exclusively* serves as "the debtor's principal residence" and nothing else. But in the anti-modification provision "'only' is an adverb modifying 'secured.'"  *See In re Macaluso*, 254 B.R. 799, 800 (Bankr. W.D.N.Y. 2000).  "The word 'only' does not modify any other word," *In re Hock*, 571 B.R. 891, 895 (Bankr. S.D. Fla. 2017), and "[t]here simply is no second 'only' in the statutory language of [section] 1123(b)(5), nor any way to read the one usage of that term to limit the use of the property rather than limiting the extent of the

---

[5]  The dissenting opinion suggests that our reading of section 1123(b)(5) renders the new definition of "debtor's principal residence" in the 2005 amendments "largely pointless."  But this ignores the other sections of the bankruptcy code, outside of section 1123(b)(5), where the new definition applies. *See, e.g.*, 11 U.S.C. § 1322(c)(1)–(2).

collateral for the secured debt," *Wages*, 508 B.R. at 167 (quoting *In re Schayes*, 483 B.R. 209, 215 (Bankr. D. Ariz. 2012)).

In the end, Lee and the dissenting opinion's reading of the anti-modification provision would have us insert language that Congress didn't put in the statute. *See Hock*, 571 B.R. at 897 ("To apply the principal-residence-only bright line approach, the [c]ourt would have to unilaterally add the word 'only' or 'exclusively' to the text of [section] 1123(b)(5) . . . ."); *see also Schayes*, 483 B.R. at 215 (emphasizing that "[t]here simply is no second 'only' in the statutory language of [section] 1123(b)(5)"). Specifically, the dissenting opinion (quoting from a bankruptcy treatise) reads the anti-modification provision as applying "only if the real estate mortgage covers . . . the principal residence *and no other property*." Dissenting Op. at 7 (omission in original) (parenthetically quoting 7 *Collier on Bankruptcy* ¶ 1123.02[5] (16th ed. 2024)). But this reading moves the "only" to modify a different term, switches "covers" for "is," and adds the italicized words that are not in section 1123(b)(5). Needless to say, "we are not allowed to add or subtract words from a statute," *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009), and "[w]e are not at liberty to rewrite the statute to reflect a meaning we deem more desirable," *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008).

If we don't adopt the *Scarborough* approach, as a fallback, Lee cites a second, case-by-case, totality-of-the-circumstances approach that focuses heavily on the parties' subjective intentions and was first set out in *In re Brunson*, 201 B.R. 351 (Bankr. W.D.N.Y. 1996),

by a bankruptcy court in the Western District of New York. Some courts have described this case-by-case approach as looking to whether the property is used "for significant commercial purposes" rather than as the debtor's principal residence. *Hock*, 571 B.R. at 897 (quotation and emphasis omitted); *Wages*, 508 B.R. at 167 (quotation and emphasis omitted). This approach looks to the totality of the circumstances to determine the "predominant character of the transaction[] and what the lender bargained to be within the scope of its lien" so that the court may classify the property as "'commercial' property" or "real property used as the debtor's residence." *See Brunson*, 201 B.R. at 354. If the bankruptcy court determines that "the transaction was predominantly viewed by the parties as a loan transaction to provide the borrower with a residence, then the anti[-]modification provision" applies. *Id.* "If, on the other hand, the transaction was viewed by the parties as predominantly a commercial loan transaction," then it doesn't. *Id.*

We reject this approach as well because "[r]eweighing the totality of the circumstances is ordinarily not a preferable way to approach a question of law." *Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1158 (11th Cir. 2021). "Basing a decision on the totality of the circumstances is 'an empty incantation—a mere conjurer's trick that serves to hide' the court's real reasons for its decision." *Id.* at 1159 (quoting *Holder v. Hall*, 512 U.S. 874, 943–44 (1994) (Thomas, J., concurring in the judgment)). "The rule of law demands more." *Id.*

That's because the totality-of-the-circumstances approach isn't grounded in the language of section 1123(b)(5). Instead, to apply this approach we would have to modify section 1123(b)(5) "so that [it] would effectively read: a chapter 11 debtor may 'modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence *unless the debtor also uses the property for significant* [or predominant] *commercial purposes*'" and would "then have to devise a standard for what constitutes a 'significant'" or predominant commercial purpose. *Hock*, 571 B.R. at 897–98. Of course, the anti-modification provision gives "no indication of where an appropriate line between 'principal residence' and 'commercial [purposes]' would be." *Id.* at 897 (quoting *In re Wages*, 479 B.R. 575, 581 (Bankr. D. Idaho 2012)). Nor does it indicate that, "once the additional commercial use of the property extends beyond some magical tipping point, the property ceases to be the debtor's principal residence." *See Schayes*, 483 B.R. at 216; *see also Wages*, 508 B.R. at 167.[6] Indeed, the anti-modification provision only requires us to determine whether Lee's mortgage is secured by real property that is her principal residence.[7]

---

[6] Even other bankruptcy courts in the Western District of New York have rejected the totality-of-the-circumstances approach in favor of our reading of the statute. *See Brooks*, 550 B.R. at 24–25; *Macaluso*, 254 B.R. at 800.

[7] Lee finally argues that our reading of the anti-modification provision could lead to "absurd results." While Lee is right that "a court may look beyond the plain language of a statute if applying the plain language would produce an

## CONCLUSION

In short, we hold that section 1123(b)(5) is unambiguous and has three requirements: "first, the security interest must be in real property; second, the real property must be the only security for the debt; and third, the real property must be the debtor's principal residence." *Wages*, 508 B.R. at 165. Because U.S. Bank holds a claim that is secured only by a security interest in real property that Lee uses as her principal residence, the anti-modification provision applies to U.S. Bank's security interest and the bank was entitled to relief from the automatic stay. Like the district court, we affirm the bankruptcy court's order granting relief from the stay.

**AFFIRMED.**

---

absurd result," *In re Lehman*, 205 F.3d 1255, 1256 (11th Cir. 2000), we will do so only "under rare and exceptional circumstances," *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930). These rare and exceptional circumstances only come up "where a rational Congress could not conceivably have intended the literal meaning to apply." *Pate*, 84 F.4th at 1205 n.3 (quotation omitted). That's not the case with section 1123(b)(5). A rational Congress could conceivably intend for "favorable treatment of residential mortgagees" to "encourage the flow of capital into the home lending market." *Cf. In re Bozeman*, 57 F.4th 895, 906 (11th Cir. 2023) (quoting *In re Bateman*, 331 F.3d 821, 826 (11th Cir. 2003)). So applying the plain language of the anti-modification provision is not absurd. And even if a judge believes the "language" Congress "used may sweep too broadly in some respects" and "too narrowly in other respects" that belief does not make the language absurd. *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1229 (11th Cir. 2001). "[T]hat is the nature of a political process and of all worldly endeavors. Imperfection is not absurdity, but is inherent in humankind and all of our works." *Id.*

21-13887          WILLIAM PRYOR, C.J., Dissenting                    1

WILLIAM PRYOR, Chief Judge, Dissenting:

This appeal requires us to decide what "is" means. The anti-modification provision of the Bankruptcy Code forbids a chapter 11 reorganization plan from modifying a creditor's rights in a claim that is secured only by an interest in "real property that *is* the debtor's principal residence." 11 U.S.C. § 1123(b)(5) (emphasis added). If the debtor resides on only *part* of the real property that secures the interest, "is" the real property the debtor's principal residence? Mistaking "is" for "includes," the majority says yes. I would say no. The anti-modification provision applies only if the entirety of the real property "is"—meaning, is equal to—the debtor's principal residence, whether or not the property is also used for other purposes. So I respectfully dissent.

In 2007, Patricia Lee mortgaged her 43-acre tract of land in southern Georgia. Lee uses only a small fraction of the tract as her principal residence: her 1,595-square-foot house and driveway sit on a two-and-a-half-acre yard on the edge of the land. She leases the remaining 40.5 acres to a third-party farmer who uses the land exclusively for commercial farming:

2                    WILLIAM PRYOR, C.J., Dissenting                    21-13887



So "from an acreage standpoint," the tract is "primarily farmland." Although Lee inherited the home and adjoining farmland together and mortgaged them as a single tract, the record contains no evidence that personal residences and adjoining commercial farmlands are "commonly" conveyed together in this part of Georgia. *See id.* § 101(27B)(A).

Nonetheless, the bankruptcy court ruled that the anti-modification provision of the Bankruptcy Code prevented the modification of mortgagee U.S. Bank's interest in Lee's property. The anti-modification provision prohibits a chapter 11 plan from modifying creditors' rights in "a claim secured only by a security interest in real property that is the debtor's principal residence." *Id.* § 1123(b)(5). The "debtor's principal residence" is "a residential structure if used as the principal residence by the debtor, including incidental property," *id.* § 101(13A)(A), and "incidental property"

21-13887          WILLIAM PRYOR, C.J., Dissenting          3

includes "property commonly conveyed with a principal residence in the area where the real property is located," *id.* § 101(27B)(A).

The bankruptcy court concluded that the anti-modification provision applied because U.S. Bank's security interest is in Lee's real property; Lee's real property is the only security for the claim; and the real property "is" Lee's principal residence because the real property "contains" Lee's principal residence. The bankruptcy court reasoned that it was immaterial that most of the secured parcel was used exclusively for commercial farming, and not as Lee's principal residence, because the anti-modification provision does not require that the property be used "only" as the debtor's principal residence. And even if the statute did require that the debtor use the property exclusively as her principal residence, the bankruptcy court ruled that the provision would still apply because the adjoining farmland constitutes "incidental property" under the definition of "debtor's principal residence." *See* 11 U.S.C § 101(13A)(A), (27B)(A). The bankruptcy court reasoned that the farmland "is real property"; is "attached to the residence"; "is located at the same address as [Lee's] principal residence"; and was "conveyed to her together" with her home and yard. The district court affirmed. *See* 28 U.S.C. § 158(a)(1).

Our decision should begin and end with the text of the statute, *Heyman v. Cooper*, 31 F.4th 1315, 1318 (11th Cir. 2022), by giving the text its "plain, ordinary, and most natural meaning," *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995). The anti-modification provision bars a chapter 11

4                    WILLIAM PRYOR, C.J., Dissenting            21-13887

reorganization plan from modifying creditors' rights in "a claim se-cured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1123(b)(5). The Bankruptcy Code defines "debtor's principal residence" as "a residential structure if used as the principal residence by the debtor, including incidental property." *Id.* § 101(13A)(A). And "incidental property" of the debtor's principal residence is "property commonly conveyed with a principal residence in the area where the real property is located"; "all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds"; and "all replacements or additions." *Id.* § 101(27B).

The majority and I agree about several matters. I agree with the majority that these provisions of the Code are "unambiguous" and yield three requirements for anti-modification protection: first, the security interest must be in real property; second, the real prop-erty must be the only security for the debt; and third, the real prop-erty must be the debtor's principal residence. Maj. Op. at 19. And I agree that the first two requirements are satisfied here: Lee does not dispute that U.S. Bank's claim is secured by her real property or that her real property is the only security for the claim.

But I disagree with the majority that the anti-modification provision's third requirement is satisfied. That requirement turns on the meaning of the word "is": the statute applies only to "real property that *is* the debtor's principal residence." 11 U.S.C. § 1123(b)(5) (emphasis added). I would hold that real property "is"

21-13887          WILLIAM PRYOR, C.J., Dissenting          5

the debtor's principal residence only if the real property "is, *in its entirety*, the debtor's principal residence," *In re Abrego*, 506 B.R. 509, 516 (Bankr. N.D. Ill. 2014) (emphasis added)—meaning, "a residential structure" that the debtor "use[s] as [her] principal residence" and "incidental property," 11 U.S.C. § 101(13A)(A). Because Lee uses only *part* of her 43-acre property as her principal residence, the anti-modification provision is inapplicable unless the remainder of Lee's property is "incidental property." *See id.* And because the bankruptcy court misunderstood that question, I would remand for the bankruptcy court to reconsider it using the proper analysis.

The term "is"—the third-person singular present tense of the verb "to be," *see Is*, THE AMERICAN HERITAGE DICTIONARY (3d ed. 1992)—has at least two ordinary meanings, *see Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins.*, 93 F.4th 1315, 1330 n.4 (11th Cir. 2024) ("'Many words have more than one ordinary meaning.'" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 6, at 70 (2012)). The first is the *descriptive* "is." This "is" links a subject and predicate so as to signify that the subject "ha[s] . . . a specified quality or characteristic" or that it "belong[s] to a specified class or group." *Be*, THE AMERICAN HERITAGE DICTIONARY (3d ed. 1992). The sentence, "The ocean is vast," uses a predicate adjective, "vast," to describe a quality possessed by the subject, "the ocean." Similarly, the sentence, "A dog is a mammal," uses a predicate nominative, "mammal," to describe a class to which the subject, "a dog," belongs. But there is also the "is" of *equivalence*. This "is" links a subject and a predicate so as to signify that the two are "equal in identity." *Id.*

The majority's example, "Atlanta is the capital city of Georgia," uses "is" this way. Maj. Op. at 12. The objective English-reader would understand that this sentence uses "is" to *equate* the subject, "Atlanta," with the predicate nominative, "the capital city of Georgia." English-readers would likewise know that "two plus two is four" means the same thing as "two plus two *equals* four." In both examples, "is" designates that the subject and predicate are *the same thing*, with *the same boundaries*.

The surrounding text makes plain that the anti-modification provision uses the "is" of equivalence. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (applying the "cardinal rule" that a word "gathers meaning from the words around it" (citation and internal quotation marks omitted)). The provision sandwiches "is" between two key determinants of meaning: "that" and "the." *See* 11 U.S.C. § 1123(b)(5) ("real property *that is the* debtor's principal residence" (emphasis added)). "That" is a relative pronoun used "to introduce a restrictive (or 'defining') relative clause, which serves to *identify* the entity being talked about." *That*, THE AMERICAN HERITAGE DICTIONARY (3d ed. 1992) (emphasis added). In the anti-modification provision, "that" introduces "the debtor's principal residence" to *identify* the aforementioned "real property." And "the," the definite article, appears before nouns "that denote particular, specified persons or things." *The*, THE AMERICAN HERITAGE DICTIONARY (3d ed. 1992); *see The*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("An article which particularizes the subject spoken of."). The use of the definite article before the noun phrase "the debtor's principal residence" clarifies that the description refers to one specific object.

21-13887          WILLIAM PRYOR, C.J., Dissenting          7

If a creditor's claim is secured by any property that is *not* the debtor's principal residence—i.e., any property that is not either the debtor's "residential structure" or "incidental property," *see* 11 U.S.C. § 101(13A)(A)—the anti-modification provision does not apply. *See, e.g.*, 7 COLLIER ON BANKRUPTCY ¶ 1123.02[5] (16th ed. 2024) (the anti-modification provision "applies only if the real estate mortgage covers . . . the principal residence *and no other property*" (emphasis added)). The real property and the debtor's principal residence must be, in other words, *equal to* one another—the "is" of equivalence at work. *See In re Scarborough*, 461 F.3d 406, 411 (3d Cir. 2006) ("By using the word 'is' in the phrase 'real property that *is* the debtor's principal residence,' Congress equated the terms 'real property' and 'principal residence.'").

The majority purports to be applying the descriptive "is" to the anti-modification provision, *see* Maj. Op. at 12–13, but it, in fact, substitutes a different word entirely: only by mistaking "is" for "includes" can the majority construe the statute to reach Lee's property. The difference is dispositive. To "include" means "to take in or contain one or more things as part of something larger." *Include*, THE AMERICAN HERITAGE DICTIONARY (2d ed. 1982). No question, Lee's 43-acre tract *contains* (i.e., "includes") her principal residence. But most of Lee's property is commercial farmland that, both parties agree, Lee does not use as her principal residence. So unless the farmland is "incidental property," *see* 11 U.S.C. § 101(13A)(A), the real property "is" *not* Lee's principal residence, because only a small fraction of the 43-acre tract is *equal to* Lee's principal residence (the "is" of equivalence) or has the *quality or characteristic of being* Lee's

principal residence (the descriptive "is"). *See, e.g.*, *Scarborough*, 461 F.3d at 411 ("[The anti-modification provision] 'protects claims secured only by a security interest in real property that *is* the debtor's principal residence, not real property that *includes* or *contains* the debtor's principal residence, and not real property *on which the debtor resides*.'" (quoting *In re Adebanjo*, 165 B.R. 98, 104 (Bankr. D. Conn. 1994))); *see also In re Reinhardt*, 563 F.3d 558, 563 (6th Cir. 2009) ("Vanderbilt argues that a 'logical reading of [the anti-modification provision] . . . is that to get the benefit of [the provision] a creditor must have a security interest in real property that *contains* the debtor's principal residence.' That Vanderbilt has to adjust the wording of the statute to reach its desired result shows the error of its interpretation." (alterations adopted) (citation omitted)).

Indeed, simple examples prove why neither sense of "is" could support the majority's interpretation. Consider the descriptive "is"—the ordinary meaning of "is" that the majority says the statute employs. That variant conveys that a predicate describes a quality or characteristic possessed by a subject or a class to which the subject belongs. The descriptive "is" does not *narrow* the predicate's descriptive scope—the predicate properly describes a quality possessed by the *entire* subject. *Cf. United States v. Masino*, 869 F.3d 1301, 1306–07 (11th Cir. 2017) (holding that because the federal gambling statute "applies only to a gambling business that '*is* a violation of the law,'. . . 'the government must prove more than a violation of some state law by a gambling business. *The gambling business itself* must be illegal.'" (citation omitted) (first quoting 18 U.S.C. § 1955(b)(1)(i); and then quoting *United States v. Bala*, 489

F.3d 334, 340–41 (8th Cir. 2007)). The sentence, "Hawaii is an island," clearly means that *all* of Hawaii is an island. But it is inaccurate to say that "Florida is an island," even though Florida *includes* several islands. Nor, when a bride sews a blue patch on her white wedding gown as a symbol of love and fidelity, would guests say that "the bride's wedding gown is blue," even though a small portion of the dress possesses the quality and characteristic of being blue.

Now consider the "is" of equivalence—the ordinary meaning that the statute actually employs. That sense of "is" designates that a subject and predicate are equal to one another. When the majority says that "Atlanta is the capital city of Georgia," the majority is clearly saying that Atlanta and the capital city of Georgia are the same thing, with the same boundaries. But, as explained, Lee's real property does not have the same boundaries as her principal residence (unless the non-residential portion is "incidental property")—Lee's property instead only *includes* her principal residence. So the majority's interpretation of the anti-modification provision is more like saying, "Georgia is Atlanta." Most United States citizens would immediately spot the error: Georgia *includes* Atlanta, but it *is not* Atlanta.

I do agree with the majority that neither ordinary meaning of "is" requires exclusivity. *See* Maj. Op. at 12–13. A subject can be equal to, or possess the quality or characteristic of, more than one predicate. Four "is" two plus two, but it "is" also three plus one. A dog "is" a mammal, but it "is" also man's best friend. The same

logic applies to the subject "real property" of the anti-modification provision. To fall within the statute, secured property need not be used "*only* or *exclusively*" as the debtor's principal residence and nothing else—it may also be "the principal residence of the debtor's roommate, the place where the debtor has her weekend lemonade stand, and the spot where she farms honey from her beehive." Maj. Op. at 12.

To satisfy the statute's requirements, the *entire* property must *also* be the debtor's principal residence—meaning, the debtor's "residential structure" and "incidental property." 11 U.S.C. § 101(13A)(A); *see Abrego*, 506 B.R. at 514 ("[T]he statute does not state that it protects real property that is *exclusively* the debtor's principal residence, [but] neither does it state that it protects real property that is *partially* the debtor's principal residence."). The secured property can have any number of uses without forfeiting anti-modification protection, so long as *one* of those uses is the debtor's principal residence. If Lee's farmland disqualifies U.S. Bank's interest from anti-modification protection, it is not because that land was used for commercial farming; it is because it was *not* used as Lee's principal residence. *Cf. Scarborough*, 461 F.3d at 411 ("[A] creditor does not receive anti-modification protection for a claim secured by real property that includes both the debtor's principal residence and other rental property *that is not the debtor's principal residence.*" (emphasis added)).

Of course, some property uses are incompatible with residency by the debtor, meaning that their presence on the property

21-13887          WILLIAM PRYOR, C.J., Dissenting          11

will necessarily negate the conclusion that the debtor uses the entire property as her principal residence. Renting a discrete portion of the property to another tenant would be an example, absent a lease provision granting concurrent possessory rights to the debtor-landlord *See* 49 AM. JUR. 2D *Landlord and Tenant* § 469 (2024) (the "implied covenant of quiet enjoyment" protects the "tenant's right to *exclusive* possession" of the premises (emphasis added)); *see also, e.g.*, *Abrego*, 506 B.R. at 511 (explaining that "[t]he majority of courts to have considered this question" have held that the anti-modification provision is inapplicable if the secured property "is a multi-unit property and the debtor resides in only one unit"). In such a case, the property should be excluded from anti-modification protection unless the leased portion constitutes "incidental property" within the Code's definition of "debtor's principal residence." 11 U.S.C. § 101(13A)(A), (27B). Some fact patterns will present closer calls, but these questions can be resolved during an evidentiary hearing, as the Code contemplates. *See id.* § 362(d) (bankruptcy court may grant relief from the automatic stay only "after notice and a hearing").

The Code's definition of "debtor's principal residence" does not undermine my interpretation. *See* Maj. Op. at 14–15. In 2005 and 2010, Congress expanded the definition of "debtor's principal residence." *See* Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109–8, § 306(c), 119 Stat. 23, 80–81 (2005); Bankruptcy Technical Corrections Act, Pub. L. No. 111–327, § 2, 124 Stat. 3557, 3557 (2010). A principal residence is no longer limited only to the debtor's brick-and-mortar home, but also includes

12                    WILLIAM PRYOR, C.J., Dissenting                    21-13887

"incidental property," which is "property commonly conveyed with a principal residence in the area where the real property is located"; "all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds"; and "all replacements or additions." 11 U.S.C. § 101(13A)(A), (27B). These definitions apply to the entire Bankruptcy Code. *See id.* § 101.

Some bankruptcy courts have reasoned that because the Code defines "debtor's principal residence" to include property interests that are not "real property" (like escrow funds, insurance proceeds, and mobile homes), the anti-modification provision cannot be read to "equate the term 'real property' with 'debtor's principal residence.'" *In re Wages*, 508 B.R. 161, 166 (B.A.P. 9th Cir. 2014); *accord In re Wissel*, 619 B.R. 299, 312–13 (Bankr. D.N.J. 2020). But our sister circuits have correctly rejected that line of reasoning. *See In re Ennis,* 558 F.3d 343, 344–46 (4th Cir. 2009); *Reinhardt*, 563 F.3d at 561–63. The *operative* statute prevents a plan from modifying a mortgage secured only by "real property that is the debtor's principal residence." 11 U.S.C. § 1123(b)(5).

This language "plainly contains two requirements": first, the secured property must "be real property," and second, the secured property must "be the debtor's principal residence." *Reinhardt*, 563 F.3d at 562; *accord Ennis,* 558 F.3d at 345–46. The Code's expansion of the definition of "debtor's principal residence" affected only the second requirement; it did not nullify the first requirement that the property be "real property." *Ennis*, 558 F.3d at 346; *see Reinhardt*,

563 F.3d at 563 ("[N]o matter how broad the definition of 'debtor's principal residence,' it still must also be 'real property' for the anti-modification provision to apply."). Because the operative provision limits its scope to "real property," it excludes some "incidental property." *Compare* 11 U.S.C. § 1123(b)(5), *with id.* § 1322(c)(1) (referring to a "debtor's principal residence" without a real-property limitation).

The statutory definitions support my interpretation. If the anti-modification provision covered any real property that merely *includes* a debtor's principal residence, there would be little need for Congress to define a debtor's principal residence as including, for instance, "property commonly conveyed with a principal residence in the area where the real property is located." *See id.* § 101(27B)(A). Under the majority's interpretation of the anti-modification provision, that property would almost always be covered anyway, making the addition largely pointless. *See United States v. Forey-Quintero*, 626 F.3d 1323, 1327 (11th Cir. 2010) ("A basic premise of statutory construction is that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant, or mere surplusage." (citation and internal quotation marks omitted)). Moreover, because "incidental property" includes any real "property commonly conveyed with a principal residence in the area," 11 U.S.C. § 101(27B)(A), my interpretation does not limit anti-modification protection "to claims secured by the *structure* a debtor uses as his or her principal residence (*i.e.*, the house)," *see In re Wages*, 479 B.R. 575, 580 (Bankr. D. Idaho 2012), *aff'd*, 508 B.R. 161. So the concern expressed by some courts that equating "real property"

14              WILLIAM PRYOR, C.J., Dissenting              21-13887

with the "debtor's principal residence" would exclude "most residential mortgage loans, which are typically secured not only by a residential structure, but also by the real property on which the structure sits," *id.*, is unwarranted. As Congress made clear, the "incidental property" on which a house sits is "commonly conveyed with a principal residence" in *every* area. *See* 11 U.S.C. § 101(27B)(A).

Because the majority incorrectly holds that Lee's 40.5 acres of commercial farmland need not be her "principal residence" for the anti-modification provision to apply, it does not address whether the farmland constitutes "incidental property" to Lee's principal residence. *See id.* § 101(13A). The bankruptcy and district courts held that the farmland was incidental property because the farmland and Lee's house "were conveyed to her together." That analysis is flawed.

The question under the statute is not whether the property and residence were *actually conveyed* together. Property is "incidental property" to a debtor's principal residence if it is "property *commonly conveyed* with a principal residence in the area where the real property is located." *Id.* § 101(27B)(A) (emphasis added). The record contains no evidence about whether a commercial farm is "commonly conveyed with a principal residence" where Lee lives, and neither court addressed the issue. I would remand that question for the bankruptcy court to consider in the first instance.

For all these reasons, I respectfully dissent.